**KINDOM URANIUM CORPORATION,**
Appellant,

v.

**Harry V. VANCE, as Trustee in Bankruptcy of Edith M. Cole, Bankrupt,**
Appellee.

No. 6078.

United States Court of Appeals
Tenth Circuit.

July 16, 1959.

B. J. Baggett, Santa Fe, N. M. (J. H. Burttram, Santa Fe, N. M., was with him on the brief), for appellant.

Richard C. Losh, Albuquerque, N. M., for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

The Kindom Uranium Company as appellant complains of the judgment of the District Court of New Mexico wherein a conveyance to the company of certain real estate was declared void as violative of 11 U.S.C.A. § 107, sub. d (2)[1] (Sec. 67, sub. d of the Bankruptcy Act) and title to the property was declared vested in appellee as Trustee in Bankruptcy of Edith M. Cole, the bankrupt and transferor. An earlier state court decision had refused to void the transfer as fraudulent under applicable

state law in a suit initiated by the bankrupt's principal creditor, a fact upon which appellant now premises a claim of res judicata upon the issue. Other questions relative to the sufficiency of the evidence to support the trial court's factual background in applying the cited statute are also presented.

On April 10, 1956, a properly acknowledged quitclaim deed to a residence in Albuquerque, New Mexico, was executed by Edith M. Cole as grantor and, a few days later, delivered to the Kindom Uranium Corporation, the grantee. Thereafter, Mrs. Cole was involved in an automobile accident with one Broadus E. Campbell which, on February 1, 1957, resulted in a judgment against Mrs. Cole for $15,000. During the course of this trial, but before judgment, the deed was recorded at the instance of the president of Kindom. The recordation, undoubtedly, was effectuated for the purpose of establishing a safeguard against the potentiality of a judgment adverse to Mrs. Cole and in excess of her insurance coverage. The potentiality became the fact and Campbell became the unsatisfied judgment creditor of Mrs. Cole in the sum of $5,000. His efforts to collect the judgment, including the suit in state court to set aside the conveyance to Kindom as fraudulent, failed.

On January 3, 1958, Mrs. Cole filed a voluntary petition in bankruptcy.[2] List-

---

1. "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent * * * (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

2. This filing was within one year after the recordation of the deed to Kindom and therefore opens the door to inquiry as to the bona fides of the transfer of the

debtor's property to Kindom. Sec. 67, sub. d(5) of the Bankruptcy Act provides:

"For the purposes of this subdivision, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona fide purchaser from the debtor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, but, if such transfer is not so perfected prior to the filing of the petition initiating a proceeding under this title, it shall be deemed to have been made immediately before the filing of such petition."

Innocent purchasers and judgment creditors are protected against unrecorded instruments of this nature under New Mexico law. New Mexico Stats.Ann. 71-2-2, 3.

ed among her debts was the Campbell judgment, $250 as owing the Kindom Corporation, $900 to her brother and some $1,446.55 in miscellaneous obligations.

 Pointing out that neither the bankrupt nor the principal creditor, Campbell, could successfully set aside the subject conveyance, appellant contends that the trustee is vested with no greater rights. The position finds comfort in frequent judicial assertion, usually interpreting the omnibus title provision of the Bankruptcy Act, Sec. 70, 11 U.S.C.A. § 110c, e, that the rights of the trustee are derived from and limited by those of the bankrupt and creditors existing at the date of bankruptcy. Section 70, however, is but one of "the full arsenal of weapons with which the trustee may attack various transfers, encumbrances or obligations and collect the assets of the estate thereby for equal distribution among creditors." 4 Collier on Bankruptcy, 14 Ed. § 70.01, p. 927. The trustee's title to property fraudulently transferred is not derived solely from that of the bankrupt or his creditors but also by virtue of the several positive provisions of the Bankruptcy Act including Sec. 67, sub. d. The trustee's rights are, of course, not absolute; they are for the benefit of all creditors and limited by that concept in particular application. Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, 76 A.L.R. 1198; In re Farmer's Co-operative Co. of Barlow, D.C. N.D., 202 F. 1008; Webster v. Barnes Banking Co., 10 Cir., 113 F.2d 1003.

Such limitations are not bound by the identical bars that may exist against the bankrupt, particular creditors, or, indeed, all creditors. Collier, supra, at p. 946, ff. states it thus:

"The courts are frequently moved to reassert the general rule that the Act 'does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or his creditors at the time when the trustee's title accrues.' This is true in that the bankruptcy trustee is not a *bona fide* purchaser or encumbrancer for value, but takes the property subject to all valid claims, liens and equities. Thus it has been said that the trustee 'stands in the shoes of the bankrupt' and has no better title than the bankrupt had at the time of the filing of the petition. Nevertheless, these general pronouncements are subject to well-recognized exceptions created by the Bankruptcy Act itself, through which the trustee is given powers to assert claims against property in the hands of others where the bankrupt would be estopped to act and, in some cases, where there are no creditors who could assert such claims."

The guiding evaluation of the trustee's title to the bankrupt's property is stated in In re Toms, 6 Cir., 101 F.2d 617, 619:

"Under Section 70, sub. a, 11 U.S.C.A. § 110, sub. a, the trustee is vested with the title of the bankrupt to all of his possessions and choses in action at the date petition is filed, except that exempt to him under the laws of the State.

"The trustee takes such property not as an innocent purchaser, but subject to all valid claims, liens and equities enforceable against the bankrupt, *except in cases where there has been a conveyance or encumbrance which is void or voidable as to the trustee by some positive provision of the bankruptcy act.*" (Emphasis added.)

To the same effect see Commercial Credit Co., Inc. v. Davidson, 5 Cir., 112 F.2d 54; Lockhart v. Garden City Bank & Trust Co., 2 Cir., 116 F.2d 658.

We conclude, as did the trial court, that the earlier consideration of the subject conveyance in the state court action brought by Campbell does not affect the trustee's rights under 67, sub. d and that the principle of res judicata is not applicable. The instant action, although attempting to establish the identical result, is between different parties and premised upon different rights. The

trial court properly considered the application of Sec. 67, sub. d to the circumstances of the conveyance. The sufficiency of the evidence upon which the transfer was found to be fraudulent is next questioned by appellant.

Mrs. Cole, the bankrupt, at the time of the conveyance, was a stockholder, officer and director of the Kindom Uranium Corporation. The property which she conveyed was her residence in Albuquerque where she lived with her daughter. She accepted telephone calls and received mail at her home for the Kindom Corporation and its president but received no salary for her services. She had outside employment but had had financial burdens for some time. Her debts, she stated, exceeded everything she had and always had since her divorce. Her home was mortgaged. According to her testimony, she began negotiations for the sale of the property to the corporation in November, 1955; her proposal was accepted by the Board of Directors the following month and the company agreed to purchase her equity for a consideration of $3,000, which was to be paid as follows: An antecedent debt for $1,000 was canceled and she was to receive 4,000 shares of the corporate stock having a par value of fifty cents a share. The evidence does not show that the debt was ever carried on the books of the corporation and its origin is in some confusion, the bankrupt testifying to several transactions whereby the company or its president lent her varying amounts over a period of time. Likewise, there is no evidence as to the market value of the stock, although the parties in their various transactions have treated the par value as its true value. The president of the corporation testified that it was agreed that Mrs. Cole was to receive 500 shares every six months by way of compensation for her services as secretary, but that she had waived payment in some instances because of the company's financial difficulties.

Appellant contends that there is no evidence to demonstrate a fraudulent intent on the date of the perfection of transfer, January 23, 1957, to bring this action within the purview of 67, sub. d(2) (d) quoted above. Indeed, the activities of Mrs. Cole with respect to this transfer were completed at a time long prior to bankruptcy and apparently prior to a time when she could have envisaged the accident and lawsuit which resulted in her indebtedness for $5,000 of the $7,000 in obligations which she sought to discharge. It is only through connivance with the transferee that an actual intent to defraud either future or existing creditors could be suspected and such a suspicion is not justified by the record.

However, Section 67, sub. d(2) (c) makes fraudulent as a matter of law a transfer without fair consideration by a debtor who believes that he will incur debts beyond his ability to pay. Since the time of the transfer was during the trial of a claim against her, large in amount as tested by her income, and since she was already indebted to her brother and responsible for supporting herself and her daughter, the deduction is inescapable that at that time she contemplated incurring liabilities which she could not discharge as they matured.

The "fair consideration" necessary to save this transaction from the taint of fraud under Section 67, sub. d(2) (c) is defined in 67, sub. d(1) (e):

"consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained."

This definition is practically a verbatim adoption from the Uniform Fraudulent Conveyance Act, section 3, and hence the cases decided under that act are persuasive in the determination of whether fair consideration was given in the instant case.

 While the burden of persuasion with respect to the insufficiency of consideration rests with the trustee asserting a right to recover the property, (as it does with all elements of an alleged fraudulent transfer) it has been held under the Uniform Act that the burden of going forward with the evidence is shifted to the defendant where the conveyance recites merely a nominal consideration. Smith v. Poppen, 57 S.D. 25, 230 N.W. 229; Zuniga v. Evans, 87 Utah 198, 48 P.2d 513, 101 A.L.R. 532. Fairness of consideration in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts, Roth v. Fabrikant Bros., Inc., 2 Cir., 175 F.2d 665; Matter of Peoria Braumeister Co., 7 Cir., 138 F.2d 520.

As previously mentioned, the existence of the antecedent debt in the present case was evidenced only by confusing, inexact testimony by the parties to the transfer. The value of the stock was never established, except as the parties themselves valued it at its par value. The corporation has not at any time paid a dividend on its capital stock and federal and state income tax returns for the year 1956 show a net operating loss of $2,388.89.

 The trial court refused to accept the par value of the stock as evidence that it had any value at all. Under the circumstances, proof of the value of the stock, if any, must be shown by market sales or the financial condition of the company. The company is in the superior position with respect to such proof and must bear the consequences of having failed to produce it. Cf. Manufacturer's Finance Co. v. Marks, 6 Cir., 142 F.2d 521, certiorari denied 323 U.S. 721, 65 S.Ct. 52, 89 L.Ed. 579; Chorost v. Grand Rapids Factory Showrooms, Inc., D.C.N.J., 77 F.Supp. 276, affirmed 3 Cir., 172 F.2d 327; Bentley v. Young, D.C.N.Y., 210 F. 202, affirmed 2 Cir., 223 F. 536; McWilliams v. Edmonson, 5 Cir., 162 F.2d 454. The issue of the giving of a fair consideration is plainly a matter for factual determination and the findings by the trier of the facts who has heard the witnesses should not be set aside unless clearly erroneous. Weld v. McKay, 7 Cir., 218 F. 807; Osley v. Adams, 5 Cir., 268 F. 114. We believe the trial court could well find the transaction to be without substance and consequently fraudulent in law.

Affirmed.