**In the Matter of Virgilio MARTINEZ, Bankrupt.**

**No. B-1-67.**

United States District Court, D. Puerto Rico.

Oct. 17, 1972.

Motion for Reconsideration Denied Nov. 6, 1972.

Benjamín Rodríguez Ramón, Hato Rey, P. R., for trustee.

Edelmiro Martínez Rivera, Old San Juan, P. R., for sureties.

## MEMORANDUM OPINION AND JUDGMENT

TOLEDO, District Judge.

This case is an aftermath of In Re Martínez (D.P.R., 1970), 311 F.Supp. 317, in which this Court held that the Referee in Bankruptcy had summary jurisdiction to entertain the Trustee's motion for a turnover order against certain sureties involved in this proceeding. At this stage, it seems appropriate to outline the factual background that gives rise to this opinion.

Virgilio Martínez Rivera filed a petition for an arrangement with his creditors under Chapter XI of the Bankruptcy Act, Title 11, United States Code, Sections 701–799, on January 19, 1967. On May 25th of that year, the debtor proposed an amended plan which was

approved by a majority of his creditors in number and amount, and which was confirmed in due time by the Court. Among the proposals contained in said plan, the debtor offered to pay to his creditors the remainder of the amount owed according to the plan, in thirty-three monthly installments beginning August 5, 1967, and on the fifth day of each month thereafter, the first six to be for Five Hundred Dollars ($500.00) each, and the remaining twenty-seven for One Thousand Dollars ($1,000.00) each. He also proposed to obtain sureties up to Twenty Thousand Dollars ($20,000.00) to secure the payments offered, the corresponding bonds to be filed within thirty (30) days after confirmation. Said bonds were duly filed, the one posted by one of the sureties— Compañía de Fianzas de Puerto Rico— being typical of the others. According to its text, said company bound itself unto the secured creditors for the principal amount of Five Thousand Dollars ($5,000.00), jointly and severally with the principal Virgilio Martínez Rivera. Said compliance bond additionally stated that the surety and the principal " . . . hereby undertake and assume full and strict compliance with the arrangements of principal debtor hereinabove stated and hereby undertake to carry out the same to the extent of Five Thousand Dollars ($5,000.00) should the principal fail to do so." The bond also contained the following clause:

"The condition of this bond is such that if the said principal faithfully complies with the terms of this arrangement then this obligation shall be null and void; otherwise, and to the extent of Five Thousand Dollars ($5,000.00) maximum liability of surety, it will remain in full force and effect."

Sureties Carlos I. Alfaro and Manuel Fernández Corujo committed themselves for Five Thousand Dollars ($5,000.00) each, Francisco Gavilán and Gerardo Marín Estrella for One Thousand Two Hundred Fifty Dollars ($1,250.00) each and Alfredo Soegard undertook his suretyship obligation to the extent of Two Thousand Five Hundred Dollars ($2,500.00). The Court confirmed said amended plan on August 28, 1967, expressly approving the bonds filed. Debtor failed to make payments due from August 5, 1967 on, and after extensive efforts to cure his defaults, the Court adjudicated him a bankrupt on June 19, 1968, and appointed Mr. Juan A. Pomar as Trustee of the estate. His Trustee's Bond was filed and approved on August 1, 1968.

As before stated, this Court in In Re Martínez, supra, held that the Referee had summary jurisdiction to determine the liability of said sureties to the estate of the bankrupt. After we entered our opinion in that case, the Trustee moved for an order against the sureties for the payment of mentioned amounts. The sureties entered an opposition to such request and the Referee, upon an order entered on June 23, 1970, dismissed the Trustee's motion. Reconsideration of such order was then requested by the Trustee, and after a hearing and due consideration of the same, the Referee reconsidered his prior order and entered an order granting the Trustee's motion for reconsideration on January 28, 1971. The Referee found that the sureties were liable to the Trustee as a matter of contract law, on the basis of the bonds filed; and also in view of Section 16 of the Bankruptcy Act, Title 11, United States Code, Section 34, which states that: "The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt"; likewise he made reference to other sections of the Act and added:

"The consent of the creditors to the plan of arrangement was made expressly in reliance upon the sureties' obligations pursuant to the compliance bonds. The very purpose of requiring such bonds was to provide for payment by the sureties in the event that the debtor failed to comply with the terms of the arrangement. A surety bond guaranteeing debtor's performance of Chapter XI arrangement is consistent with the provisions of that

Chapter. Section 356 declares that 'an arrangement . . . shall include provisions modifying or altering the rights of unsecured creditors generally or of some class of them upon any terms, or for any consideration.' Section 357(8) permits an arrangement to include 'any appropriate provisions' to this and not inconsistent with this chapter. Section 326 envisions the use of sureties to guarantee debtor's performance; the court is expressly empowered to order debtor to file a bond or undertaking 'with sureties approved by the court and in such amount as the court may fix' to indemnify the estate against subsequent loss prior to and in the event of an order either adjudging the debtor a bankrupt or commencing bankrupty proceedings.

Upon court confirmation of the arrangement and with filing of the surety bonds as provided therein, the arrangement and its provisions are 'binding upon the debtor, upon any person issuing securities or acquiring property under the arrangement and upon all creditors of the debtor . . . " Section 367(1). Thus, on default by the debtor, the creditors, pursuant to the terms of the arrangement, may seek recovery on the surety bonds.

Where the debtor has defaulted on the terms of the arrangement, Section 377 permits the institution of bankruptcy proceedings in the interests of the creditors. Where, as in the present case, no bankruptcy proceeding was pending at the time of debtor's original petition for arrangement, it is provided that 'the bankruptcy proceeding shall be conducted, so far as possible, in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed and decree of adjudication had been entered on the day when

the petition under this chapter was filed . . .' Section 378[a] (2). It has been held, however, that this reference back 'so far as possible' to the date of the arrangement petition is not to be construed to nullify the contractual aspects of the prior arrangement. Property which has come into being by virtue of the arrangement is includable in the bankrupt estate. In re Wood, 83 F.Supp. 466 (D. C.Tenn.1949). Surety bonds obtained by the debtor to guarantee his arrangement with creditors constitute 'a right to action arising upon contract' which would qualify as 'property' of the debtor includable in the bankrupt estate. Section 70a(6)."

The Referee, on ending, stated the following:

'We believe that to exonerate the sureties upon the bankruptcy of the debtor would be to deprive the creditors of the very protection for which they bargained and to unjustly enrich the debtor's sureties. It would furthermore, nullify the clear obligation of the sureties. The policy behind a discharge in bankruptcy is merely to extricate an insolvent debtor from what would otherwise be a financial impasse. See MacLachlan, Bankruptcy, p. 88 (1956). As such, it is purely personal to the bankrupt. It should not and may not be interpreted to exonerate sureties or other co-debtors to the prejudice of creditors. Such a result would be against the tenor of the Bankruptcy Act, which is designed for the benefit and relief of creditors as well as debtors. Therefore, the sureties liabilities in this proceeding is unavoidable."

The mentioned sureties have petitioned this Court for the review of such order under Section 39(c) of the Act, Title 11, United States Code, Section 67,[1] and have raised different points of

---

I. Section 67(c) of Title 11, United States Code, reads:

"A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with

law in support of their petition. The Court believes that none of the points raised are sufficient in law to obtain a reversal of the order reviewed. The reasons therefor follow:

■ Petitioners attack the status of Mr. Pomar, Trustee, claiming that he did not comply with Sections 50(b) and (k) of the Act, Title 11, United States Code, Section 78(b) [2] and (k) [3] because his bond was not entered within the time stated therein, but several days thereafter. On the basis of such premise, they claim that the Trustee is acting without authority in this proceeding. We need not detain ourselves unnecessarily on this issue. The short answer to this claim is that even though a trustee has not given bond within the term stated in Section 50(b) of the Act (within five days after appointment or within such further time as the Court may permit, not exceeding five days) the trustee's acts are valid as having been carried out as a *de facto* trustee. The right of the trustee to act as such and to officially perform his duties can only be ended by a judicial declaration of vacancy. The sureties have accepted and dealt with the Trustee since the commencement of this proceeding against them without having raised that point sufficiently early in time. Sharfsin v. United States (4th Cir. 1920), 265 F. 916, and cases cited therein. Cf. Kelly v. United States (5 Cir. 1931), 47 F. 2d 122.

■ We need not enter into a determination as to whether the assumption of the bonds as executory contracts by the Trustee was notified to sureties. The mere fact that the sureties have been defending themselves against the Trustee's claim is enough, in our view, to defeat the sureties' position on this issue. Moreover, at the date of bankruptcy, the Trustee becomes vested, in accordance with Section 70(a) of the Act, Title 11, United States Code, Section 110, " * * * with the title of the bankrupt * * * to all of the following kinds of property wherever located:

> (3) powers which he might have exercised for his own benefit . . . ;
>
> (5) property, including rights of action . . . . ;
>
> (6) rights of action arising upon contracts."

The Referee in Bankruptcy aptly described in his order reviewed herein the contours of the sureties' liability and the Trustee's title to such bonds. He wrote:

> "Where the debtor has defaulted on the terms of the arrangement, Section 377 permits the institution of bankruptcy proceedings in the interests of the creditors. Where, as in the present case, no bankruptcy proceed-

---

the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest."

2. Title 11, United States Code, Section 78(b), states:

"Receivers and trustees, before entering upon the performance of their official duties and within five days after their appointment or within such further time, not to exceed five days, as the court may permit, shall qualify by entering into bond to the United States, with such sureties as shall be approved by the courts, conditioned for the faithful performance of their official duties."

3. Title 11, United States Code, Section 78(k), states:

"If any referee, receiver, or trustee shall fail to give bond as herein provided and within the time limited, he shall be deemed to have declined his appointment and such failure shall create a vacancy in his office."

ing was pending at the time of debtor's original petition for arrangement, it is provided that 'the bankruptcy proceeding shall be conducted, so far as possible, in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed and decree of adjudication had been entered on the day when the petition under this chapter was filed . . .' Section 378[a](2). It has been held, however, that this reference back 'so far as possible' to the date of the arrangement petition is not to be construed to nullify the contractual aspects of the prior arrangement. Property which has come into being by virtue of the arrangement is includable in the bankrupt estate. In re Wood, 83 F.Supp. 466 (D.C.Tenn. 1949). Surety bonds obtained by the debtor to guarantee his arrangement with creditors constitute 'a right to action arising upon contract' which would qualify as 'property' of the debtor includable in the bankrupt estate. Section 70a(6)."

Neither can we agree with the sureties' point relative to the defense of *res judicata*. The sureties' position is that Bauer International Corporation, which happens to be the principal among several creditors of the bankrupt, petitioned the Court for a hearing, among other particulars, for bringing action against sureties and adjudicating the debtor for failure to perform the terms and conditions of the plan of arrangement. After hearing said motion, the Referee found that the debtor was unable to carry out the proposed arrangement, dismissed the proceeding under Chapter XI of the Act, and adjudicated Virgilio Martínez Rivera a bankrupt. This reduced set of circumstances cannot be utilized as a supposed judgment against the Trustee, preventing him from claiming the sureties' liability under their bonds.

■■ We concede that the doctrines of *res judicata* and *collateral estoppel by judgment* apply to decisions of bankruptcy courts. See Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Yet, we do not deal here with the issue of the applicability of such doctrines but, rather, whether the Trustee is prevented in this specific case by any such rules from acting against the sureties. In order that a former judgment be an absolute bar to a subsequent action there must be the most perfect identity among parties, things and causes of action. Article 1204 of the Civil Code of Puerto Rico (Title 31, Laws of Puerto Rico Annotated, Section 3343)[4]. Bauer International, one of bankrupt's creditors, is not the Trustee and has never claimed that it represented any creditors or any other interests, except its own. On the other hand, the Trustee represents the estate of the bankrupt for the benefit of all the creditors and, in the representation of the Court, as a court officer. Therefore,

---

4. The mentioned Section provides:

"Presumptions established by law may be destroyed by proof to the contrary, except in the cases in which it is expressly prohibited.

Only a judgment obtained in a suit for revision shall be effective against the presumption of the truth of the res adjudicata.

In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

In questions relating to the civil status of persons, and in those regarding the validity or nullity of testamentary provisions, the presumption of the res adjudicata shall be valid against third persons, even if they should not have litigated.

It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same.—Civil Code, 1930, § 1204."

there is lacking the most perfect identity among litigants that positive and case law of the Commonwealth of Puerto Rico require to prevent a litigant from exercising certain rights against a defendant. Kindom Uranium Corp. v. Vance (10 Cir., 1959), 269 F.2d 104 (1959).

Although in another context, we have recently dealt *in extenso* with those two doctrines in our order entered May 30, 1972, granting a certain secured creditor's motion to strike, in the case of Agregados de Manati, Inc., B–87–71. In that case, we held that a debtor in a Chapter X proceeding could not question the status of a secured creditor against it, as real party in interest, because of the matter having been finally and firmly adjudicated upon stipulated judgments in the Commonwealth courts. We applied the doctrine of *collateral estoppel by judgment*, finding that both the creditor and the debtor were the same parties in the proceedings held before the Superior Court of Puerto Rico, and that the issue had been firmly established between them through judgments entered by said Court. The mentioned case is wholly inapposite in the context of the case at bar.

We arrive at the same conclusion as regards the applicability in the instant case of Bartfield v. Parkhurst, (D.P.R., 1953), 117 F.Supp. 82. In that case, Chief Judge Ruiz-Nazario dismissed a complaint filed by the therein plaintiffs against the therein defendants. On the basis of the doctrine of *res judicata* he found that the plaintiffs had filed a complaint in the District Court of Bayamón which had been dismissed for want of prosecution. Judge Ruiz-Nazario applied said doctrine finding that:

"The nature of the transaction alleged in both actions is such as to leave no doubt that the added defendants herein were in privity to the defendants in the former action dismissed by the District Court of Bayamón."

As we have seen, we are dealing in the case at bar with a wholly different set of circumstances. Between the Trustee and Bauer International there certainly cannot be privity, to justify the application of the doctrine. The issue raised on this point by the sureties is consequently without merit!

In Re Martínez, *supra*, disposed of the summary jurisdiction issue raised again by the sureties. Likewise, we disposed on that occasion of the sureties' claim to trial by jury, which they have again raised in their petition for review.

Aside from all the legal considerations heretofore analyzed, the Court cannot close its eye to a very simple reality in terms of equity. It is inconceivable that a creditor of a debtor who has sought a rehabilitation under Chapter XI of the Bankruptcy Act, and who has obtained the acceptance of his creditors to pay in accordance with a certain arrangement plan which provides for a joint guarantee for future payments, can now lose the fruits of all the equities they bargained for. If the filing of the bonds was a consideration for them accepting the arrangement plan, the Court now cannot extend its equitable hand in favor of the principal obligee who has defaulted on his promises, nor of his joint sureties. To agree with the sureties' position in this proceeding would certainly constitute an inequitable and unjust result. Moreover, it would bear heavily on the confidence that creditors place in the Bankruptcy Act as a vehicle for the rehabilitation of financially embarrassed debtors. We certainly cannot agree to consecrate such an unjust enrichment.

Finally, the Trustee in his brief asks the Court to impose on the sureties a penalty for attorney's fees " . . . due to their obstinacy and contumacy in resisting the Trustee's endeavors to collect such amount ($20,000.00)." We have taken notice of the Trustee's efforts during all this proceeding, and in the preceding one of In Re Martínez, supra, and we agree with the Trustee as to the contumacy of the sureties.

In view of the foregoing, the Court hereby decides, adjudges and decrees, that the order entered by the Referee in Bankruptcy on January 28, 1971, be and is hereby affirmed in all its parts. Compañía de Fianzas de Puerto Rico, Carlos I. Alfaro, Manuel Fernández Corujo, Francisco Gavilán, Gerardo Marín Estrella and Alfredo Soegard are hereby ordered to pay to the Trustee Mr. Juan A. Pomar the full amount of their respective compliance bonds, within ten (10) days after this order be final. Costs are to be taxed against the sureties by the Clerk of this Court, to include the sum of $1,500.00 for attorney's fees for the Trustee, to benefit the estate of the debtor.

It is so ordered.