In re CARLA LEATHER, INC., Debtor.

Washington DRUKER, Appellant,

v.

David M. GREEN, as Trustee of the Estate of Carla Leather, Inc. and Eliot H. Lumbard, as Trustee of the Estate of Meritum Corporation, Appellees.

No. 85 Civ. 0034 (GLG).

United States District Court,
S.D. New York.

July 1, 1985.

Philip E. Silberberg, New York City, for Washington Druker.

Cleary, Gottlieb, Steen & Hamilton, New York City, for Eliot H. Lumbard, Trustee of the Estate of Meritum Corp. and David M. Green, Trustee of the Estate of Carla Leather, Inc.; Richard F. Ziegler, Robert J. Stillman, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

This is an appeal pursuant to 28 U.S.C.A. § 158 (West Supp.1985) and Rule 8001(a) of the Rules of Bankruptcy Procedure ("Bankruptcy Rule [ ]" or "Rule [ ]") from a final order and an errata order of the Hon. Howard C. Buschman III, Bankruptcy Judge. These orders rejected the appellant's challenges to a compromise settlement between two bankrupt estates, to a trustee election, and to the conduct of a

bankruptcy trustee. The decision and orders below are affirmed.

## I. BACKGROUND [1]

From 1975 until mid-1984, Carla Leather Inc. ("Carla"), manufactured, distributed, and sold women's leather apparel. Beginning in 1976, Meritum Corporation ("Meritum") acted as Carla's factor. Meritum held a continuing security interest in Carla's present and after-acquired inventory, products, and proceeds thereof. Carla's two owner-principals, Washington Druker and Aron Vaisman, and their wives, personally guaranteed all of Carla's obligations to Meritum.

Despite increased sales throughout its operating history, Carla sustained substantial and steady operating losses. In May 1982, following Carla's and Meritum's unsuccessful joint efforts to secure additional financing for Carla, Carla ceased operating and began liquidating its inventory and other assets. Meritum was left with several million dollars in outstanding loans to Carla.

### The Meritum Bankruptcy

Meritum filed a voluntary reorganization petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1982), on May 28, 1982. The bankruptcy court converted that Chapter 11 proceeding into a Chapter 7 proceeding, see 11 U.S.C. §§ 701–766 (1982), on September 27, 1982.[2] Following his appointment and confirmation as trustee of the Meritum estate, Elliot H. Lumbard ("Lumbard" or the "Meritum Trustee") commenced a one-year investigation into the affairs of Meritum and Carla.

### The Meritum Action

In January 1984, the Meritum Trustee brought an action in this Court against Washington Druker, Brancorp Factors, Inc. ("Brancorp"), Aron Vaisman, and others on claims arising out of those defendants' allegedly fraudulent scheme to transfer the income, assets, and business of Carla to a successor corporation, Carla Maglia, without paying off Carla's debts. The complaint stated several related claims, including a claim against Druker on the basis of his personal guarantee to Meritum of the Carla debt.

The Meritum Trustee sought recovery of Carla's debt to Meritum, which had allegedly grown to $12.2 million. Carla, by then an assetless shell, was joined as a nominal defendant.

### Carla's Bankruptcy

Carla filed a voluntary petition for liquidation under Chapter 7 of the Bankruptcy Code on May 8, 1984, four months after the commencement of the Meritum action. (The filing of Carla's petition raised an issue as to whether the claims asserted by Meritum were actually the assets of the Carla estate.) The schedules accompanying the petition listed assets of $2,500 and liabilities of $1,267,328.33 exclusive of the debt to Meritum.

On the same date, David M. Green ("Green" or the "Carla Trustee") was appointed by the United States Trustee to serve as interim trustee of the Carla estate.[3] A few days later, Brancorp's attorney telephoned Green and called his attention to the Meritum action. During the next few weeks, Green spoke with Brancorp's attorney for approximately five hours. Green then met with the Meritum estate's attorneys and discussed Meritum's claims and its responses to Carla's possible

---

**1.** Much of the factual background is extracted from Judge Buschman's factual findings. *See In re Carla Leather, Inc.,* 44 B.R. 457, 460–65 (Bankr.S.D.N.Y.1984). Either the appellant has not challenged such findings, or the Court has not found them clearly erroneous.

**2.** The Bankruptcy Court may convert a Chapter 11 proceeding into a Chapter 7 proceeding for cause. 11 U.S.C. § 1112 (1982).

**3.** Chapter 15 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 1501, 15101–151326 (1982),

designated 18 "pilot districts" in which the United States trustee system applies. In those districts, a United States Trustee appoints interim trustees and, *inter alia,* supervises the administration of reorganization and liquidation proceedings. The United States Trustee program was eventually extended to September 1986. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–358, § 323, 98 Stat. 336 (July 10, 1984).

defenses. Green then spent several hours researching Carla's defenses himself. He also engaged an accountant to analyze the amount of Meritum's claim against Carla. Green's accountant spent forty-five hours culling through Carla's and Meritum's books.

### The Settlement

About one month after the commencement of his investigation, Green entered into settlement negotiations with the Meritum estate to resolve the conflict between the two estates. On June 22, 1984, after four days of extensive negotiations, the Carla and Meritum estates reached a settlement (the "Settlement" or the "Agreement"). The Settlement was announced the same day at a pretrial conference before this Court. The Court had called the conference to consider the impact on the Meritum action of a motion by two defendants therein to stay that action pursuant to section 362 of the Bankruptcy Code. That section stays any pending judicial action against a person or debtor who files a petition in bankruptcy. By resolving the differences between Carla and Meritum, the Settlement nullified the automatic stay.

The Settlement provides that the Carla and Meritum trustees will jointly prosecute the Meritum action and will divide the eventual proceeds five-sixths to Meritum and one-sixth to Carla. However, Meritum will not share in the first $250,000 that Carla receives as part of its one-sixth share. Meritum will take pro rata with the other creditors in any distribution from the Carla estate in excess of $250,000. Meritum is to receive its distribution from the Carla estate as an unsecured creditor. The Agreement recognizes Meritum's claim in the amount of $10.8 million instead of the $12.2 originally sought. The Meritum estate will bear the legal expense of prosecuting the lawsuit.

### The Election

On or about July 10, 1984, The United States Trustee scheduled a meeting of creditors to elect Carla's permanent trustee for July 25, 1984. See 11 U.S.C. § 341(a) (1982) ("Within a reasonable time after the [filing of a petition] ..., there shall be a meeting of creditors."). At the meeting, four creditors holding unsecured claims totalling approximately $545,000, requested an election of a trustee. Section 702 of the Bankruptcy Code appeared to mandate an election in those circumstances. 11 U.S.C. § 702 (1982).[4] The four creditors voted their claims for Andrew J. Tunick. Lumbard presented a proof of claim in the amount of $10,891,821 and voted that claim for Green. Carla's counsel objected to Lumbard's vote, contending that section 702 of the Bankruptcy Code prohibited the Meritum estate from voting because it held "an interest materially adverse" to the debtor and because its claim was "disputed."[5]

Harold Jones, an Assistant United States Trustee for this district, presided over the meeting. It was his duty to inform the bankruptcy court of the dispute. At the close of the meeting, he stated,

[O]ur office is mandated, pursuant to the Bankruptcy Rules, to render a report [of an election dispute] to the Court.

Within ten days of this election, of this date, any party who wishes to bring on a hearing before Judge Buschman must do

---

**4.** Section 702(b) of the Bankruptcy Code provides:

At the meeting of creditors under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a)(1) of this section, and that hold at least 10 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

11 U.S.C. § 702(b) (1982).

**5.** A creditor may vote for a candidate for trustee only if such creditor—

(1) holds an allowable, undisputed fixed, liquidated, unsecured claim ...

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

11 U.S.C. § 702(a) (1982).

so in order to have a determination on this matter.

As I read the rules in the Bankruptcy Code, if there is no such request made, then the Interim Trustee, by operation of law, becomes the permanent Trustee. Ordinarily, or pursuant to the rules rather, the request for a hearing must be made within ten days of today. Because of certain practical problems in my own office, that report in all likelihood will not be typed and filed and sent to all of the various parties who desire a copy probably before next Monday or Tuesday.

So as not to prejudice anyone's rights in this matter, what our office recommends, and is generally followed by the Bankruptcy Court, is that the ten-day period begin to run from the date of the report as opposed to today's date, so that in all likelihood, anyone who requests a hearing on the report, and merely because of the volume of paper that our office is required to deal with, and also the volume of paper that's been generated by this election, that report will probably not be done until Monday or Tuesday.

Transcript of Hearing under Section 341(a) at 46–48. No one objected at the meeting to the foregoing statement of the Assistant United States Trustee.

### Druker's Objections

The United States Trustee's report was served on August 2, 1984. The Report states:

> Bankruptcy Rule X–1006(c) provides ten days from the date of the meeting of creditors for a party to make a motion for the resolution of the election dispute. The United States Trustee recommends

that the ten day period commence from the date of this report so that parties will be provided ample time to take whatever position they deem appropriate.

Report of Election Dispute Pursuant to Bankruptcy Rule X–1006(c). Druker's counsel did not receive the report until Thursday, August 9. On Monday, August 13, 1984, Druker's attorney served a motion to resolve the election dispute in Tunick's favor. Druker's papers also sought to disqualify Green from serving as the Carla trustee in the event that the election dispute were resolved against Druker. Druker's motion papers were filed with the bankruptcy court on August 16.

On July 26, 1984, the Carla and Meritum trustees jointly applied to Judge Buschman in the Carla proceeding and to Judge Ryan in the Meritum proceeding for leave to enter into the Agreement.[6] On August 30, 1984, Druker filed his objections to the Agreement. His August 30 papers also informed the bankruptcy court that Bobellen Corporation, an unsecured creditor of Carla, had joined in his motion contesting the election.

### The Proceedings Before Judge Buschman

On September 5 and 6, Judge Buschman held an evidentiary hearing on the motions to approve the Agreement, to resolve the election dispute and to disqualify Green as Carla's trustee. On November 2, 1984, Judge Buschman issued an opinion resolving the controversies before him. *In re Carla Leather, Inc.*, 44 B.R. 457 (Bankr.S. D.N.Y.1984). That opinion was modified by an errata order entered November 19, 1984.[7]

---

**6.** Judge Ryan granted the Meritum trustee leave to enter into the Agreement by order dated September 6, 1984. The order was entered after notice and a hearing at which no opposition was raised.

**7.** The errata order corrected a misstatement in Judge Buschman's decision regarding the content of the Settlement. In describing the Settlement, the November 2 opinion stated, "Carla would receive the first $250,000 of the recovery clear of any claims by Lumbard. Proceeds

above $250,000 would be distributed with the ⅚ going directly to the Meritum estate and the ⅙ going directly to the Carla trustee." *In re Carla Leather, Inc., supra,* 44 B.R. at 463–64. The errata order corrected this statement by noting that the ⅙, ⅚ distribution would apply to the entire recovery. The first $250,000 of Carla's ⅙ share would be free from claims by Lumbard. The errata order also made clear that this correction would not impact on Judge Buschman's decision.

As an initial matter, Judge Buschman rejected as untimely Druker's motion to resolve the election. He, therefore, declined to address the substance of that dispute. Judge Buschman proceeded to exhaustively review the Settlement. He found it "fair and equitable," *id.* at 465, "in the best interests of creditors," *id.* at 471, and well above " 'the lowest point in the range of reasonableness,' " *id.* at 465, 471 (quoting *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1984)). In so finding, he rejected Druker's assertions that Green's investigation of the Settlement was inadequate; that Green, in negotiating the Settlement, overstepped his authority as interim trustee; and that the Settlement was tainted by the appearance of impropriety. Finally, Judge Buschman refused to disqualify Green for cause. *See* 11 U.S.C. § 324 (1982) ("The court, after notice and a hearing, may remove a trustee ... for cause."). Pursuant to his decision and errata order, Judge Buschman entered an order on November 20, approving the Agreement, rejecting Druker's application to resolve the election dispute, and denying Druker's motion to disqualify the Carla Trustee for cause. The order also confirmed Green as trustee of the Carla estate, authorized the retention of Cleary, Gottlieb, Steen, & Hamilton as special counsel to the Carla estate, and liquidated and allowed Meritum's claim against Carla in the amount of $10,891,821. *In re Carla Leather, Inc.*, No. 84–B–0700 (Bankr.S.D. N.Y. Nov. 20, 1984) (order).

*The Appeal*

On appeal, Druker challenges several of Judge Buschman's findings. Druker first contends that the bankruptcy court erred in denying him the right to challenge the disputed election. Given the circumstances, he argues that as a matter of law, his challenge should have been deemed timely. Although Druker does not quibble with Judge Buschman's conclusions about the fairness of the Agreement, he maintains that Green's conduct in entering into that Agreement merits its rejection. Should the Court deny his challenge to the Agreement, Druker asks the Court to reverse Judge Buschman's refusal to dismiss Green as Carla's trustee. For the first time, Druker also challenges the constitutionality of the bankruptcy court's jurisdiction under the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C.A. §§ 151–58 (West Supp.1985). Although the Court differs with Judge Buschman in some respects regarding matters of law, these differences do not warrant reversal.[8] The decision and orders of the bankruptcy judge are, therefore, affirmed.

## II. DISCUSSION

### A. The Election Dispute

Bankruptcy Rule X–1006(c) governs the resolution of election disputes in so-called pilot districts like the Southern District of New York in which the United States Trustee system is in effect.[9] According to that rule,

> [i]f an election is disputed, the presiding officer shall promptly inform the court in writing of the dispute. Pending disposition of the dispute by the court, the interim trustee shall continue in office. If no motion for the resolution of the election dispute is made to the court within ten days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.

Bankruptcy Rule X–1006(c). Although Druker maintains that the equities of this case support extending the ten-day deadline, the language and context of the rule do not permit its enlargement. Even if compelling equities could justify an en-

---

8. Bankruptcy Rule 8013, which governs the standard of review on this appeal, states,

> On an appeal the district court ... may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

> Bankruptcy Rule 8013.

9. See *supra* note 3.

largement, such equities are not present in this case.

### 1. The Rules of Bankruptcy Procedure

The Rules of Bankruptcy Procedure are in two parts. A comprehensive set of rules regulates bankruptcy proceedings in non-pilot districts. Another set of "Part X" Rules, of which Rule X–1006 is one, apply in pilot districts. These pilot rules supplement the standard rules to adjust for the United States Trustees. The pilot rules do not, however, replace the standard rules. Instead, the two sets of rules interface to create a coherent set of procedures for pilot districts.

Rule X–1001(b) lists the bankruptcy rules that apply in pilot districts. In addition, a chart appended to the advisory notes to Rule X–1001 lists those bankruptcy rules affected by the Part X Rules. The bankruptcy rules other than those listed in the text and advisory note to Rule X–1001 apply in both pilot and non-pilot districts.[10]

 Among these are Bankruptcy Rule 9006(b), which governs the calculation and enlargement of time periods in the rules. Bankruptcy Rule 9006(b) generally permits enlargement of such time periods. However, Rule 9006(b)(2) eliminates any discretion to enlarge time periods in certain specified instances in which, in the words of the advisory committee note, "the interest of prompt administration of bankruptcy cases" dictates strict adherence. Rule 9006 advisory committee note. Among the time periods that may not be enlarged is

the ten-day period in Rule 2003(d) for moving to resolve election disputes in non-pilot districts.

Rule 2003(d) and Rule X–1006(c) are sister provisions. In fact, the language of the two rules is identical, except for the wording that substitutes the United States Trustee for the clerk of the bankruptcy court. Not suprisingly, the advisory note to Rule X–1006 lists Rule 2003(d) as the provision that corresponds to X–1006(c). Since none of the original bankruptcy rules that remain applicable in pilot districts were redrafted to reflect the existence of the pilot rules, references to specific original rules in the applicable non-pilot rules must be read to apply to the pilot district rules that correspond to the original rules to which the text refers. Thus, Rule 9006(b)(2)'s absolute prohibition on the enlargement of the ten-day time period for objecting to election disputes applies to Rule X–1006(c)'s ten-day deadline.

Strict adherence to this deadline furthers the policy that underlies Rule X–1006(c). That subsection's primary emphasis is on the speedy resolution of election disputes. The text and advisory committee notes to the rule clarify that emphasis. Both Rule 2003(d) and Rule X–1006(c) state that the officer presiding at the election must "promptly" inform the bankruptcy court of the dispute. In addition, the advisory notes to Rules X–1006(c) and 2003(d) state that the court should be informed "immediately" and reference the "expediency" with which election disputes should proceed.[11]

---

**10.** *Sound policy supports this analysis of the rules.* Were the standard rules inapplicable in pilot districts, the pilot districts would be without guidance in many important procedural areas and would be forced to craft their own provisions. Conflicting procedures might then apply in pilot and non-pilot districts. Such conflict would run contrary to the limited purpose of the pilot districts—the implementation of the United States Trustee system. *See* H.R.Rep. No. 95–595, 95th Cong., 2d sess., *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6063 ("The primary function of United States trustees will be to establish, maintain, and supervise panels of private trustees to serve in liquidation cases ... and to serve as, or appoint standing trustees to serve as, trustees in individual repayment plan cases....").

**11.** The rules do not discourage election disputes *per se.* They simply encourage the speedy resolution of such disputes. In fact, the advisory committee note to Bankruptcy Rule X–1006(c) says that the bankruptcy court will resolve an election dispute "when an interested party (not the United States trustee) moves for resolution of the dispute." Bankruptcy Rule X–1006(c) advisory committee note. This language indicates that anyone with an interest in an election, even one without voting rights, may challenge the result of that election.

The appellees argue that Druker does not have standing to challenge the election results. Although the Court's view is to the contrary, the untimeliness of Druker's motion obviates the need to resolve the issue of standing.

Were bankruptcy courts to permit extension of the ten-day filing period, every missed deadline might occasion a dispute about the equities of the missed filing. In some cases, such a protest might be warranted. But the uncertainties inherent in a flexible deadline are those that the rules seek to avoid. Their emphasis on speedy adjudication of election disputes mandates a firm deadline.

■ In his decision, Judge Buschman stated, "Given that Rule 9006(b)(2) does not expressly refer to Rule X–1006(c), enlargement might be possible in the face of compelling equities." *In re Carla Leather, Inc., supra,* 44 B.R. at 465. I cannot agree. The ten-day limit on the filing of motions contesting an election of a trustee is firm and subject to no exceptions. The disputed election took place on July 26, 1984. Druker served his motion to resolve the election dispute on August 13 and filed it with the court on August 16. Both service and filing were far outside of the ten-day limit. The motion was, therefore, untimely, and the bankruptcy court correctly refused to consider it.

2. Equitable Enlargement

■ Even if the bankruptcy court could have equitably enlarged the ten-day time period, the facts as Druker presents them [12] would not have merited enlargement. No doubt, Druker's predicament evokes some sympathy. At the creditor's meeting, the Assistant United States Trustee informed him that, as a general rule, a motion requesting resolution of an election dispute need not be filed until ten days after the issuance of the report. The United States Trustee issued that report on August 2, and Druker claims to have received it on Thursday, August 9. He served his motion the following Monday.

Absent the Assistant United States Trustee's statements, Druker may well have followed the strictures of the rule.

But a variety of factors temper the Court's sympathy. One is that Druker knew of the ten-day deadline. Each of the statements upon which he assertedly relied paraphrased the language of Rule X–1006(c). For example, the final paragraph of the election report states,

Bankruptcy Rule X–1006(c) provides ten days from the date of the meeting of creditors for a party to make a motion for the resolution of the election dispute. The United States Trustee recommends that the ten day period commence from the date of this report so that parties will be provided ample time to take whatever position they deem appropriate.

Report of Election Dispute Pursuant to Bankruptcy Rule X–1006(c) ¶ 9. Druker not only knew of the rule but could have complied with it. He could have filed a protective motion with the Court prior to the ten-day deadline and supplemented that motion before the hearing. Since Druker attended the meeting and knew of the dispute, he could have addressed the specifics of the dispute in his motion papers. Yet he failed to take any protective action. Curiously, he did not receive the election report until August 9, one week after it was filed and ten days after the United States Trustee indicated that it would be ready. Apparently, he did not inquire about the long-overdue report.

In addition, Druker's service of his motion was far from fastidious. Although Druker filed his motion on August 13, within 10 days of the issuance of the report, he did not serve it on the bankruptcy court until August 16, outside of any conceivable time limit.[13] Druker knew that Rule X–

---

12. Judge Buschman erroneously found that Druker did not attend the creditors' meeting and thus could not have relied on the Assistant United States Trustee's comments at the meeting. *In re Carla Leather, Inc., supra,* 44 B.R. at 465. Both parties concede, and the evidence is firm, that Druker attended the meeting. Druker's attendance at the meeting is not, however, dispositive.

13. The parties dispute whether Rule X–1006(c) requires that a party file its motion within ten days or merely serve it within that time. Judge Buschman found it unnecessary to reach this question, and we find likewise. Since the ten-day time period is firm, the nature of any filing outside of that deadline does not concern the Court.

1006(c) requires that such motions be "made to the court." Yet he carelessly chanced that service on the parties would suffice. His carefree attitude does not impress.

Druker's status at the election and in this bankruptcy proceeding generally also evokes little sympathy. The Bankruptcy Code prohibits Druker from voting his contingent claim at the election.[14] In addition, that claim is of questionable validity. It arises out of Druker's status as a guarantor of Carla's debt to Meritum and will mature only if Carla pays Meritum on that guaranty. Of course, the Carla estate's only asset is its interest in the Meritum action in which Druker is a defendant. Only if Carla prevails against Druker and his co-defendants will it be able to repay Meritum. If that occurs, Druker's contingent claim on the Carla estate will likely be subordinated on equitable grounds to the claims of less culpable creditors. *See In re Mobile Steel Co.*, 563 F.2d 692 (5th Cir. 1977); 11 U.S.C. § 510(c) (1982). The Court can fathom little reason for equitably enlarging a time period to permit objections by one with such a questionable interest in the outcome of the bankruptcy proceeding on which his objection bears.

Those with a greater interest in the Carla bankruptcy have not objected to the election. None of the creditors who voted against Green has expressed any interest in joining Druker's challenge. Instead, these creditors apparently prefer that the Carla bankruptcy proceed to a swift conclusion. Only Bobellen Corporation, a $73,000 creditor of Carla, has joined Druker's motion. Bobellen, however, did not attend the election or vote its claim there. To extend the filing deadline on equitable grounds would, given all of the above-noted circum-

stances, make a mockery of Rule X–1006(c).

### B. *The Agreement*

In *In re Ira Haupt & Co.*, 361 F.2d 164 (2d Cir.1966) ("*Haupt*"), the Second Circuit considered a challenge to a bankruptcy trustee's retention of his own small law firm to represent the bankrupt estate. Frowning of that practice, the court stated,

> The conduct of bankruptcy proceedings not only should be right but must *seem right*. Even when litigation is likely to be the trustee's chief responsibility, there must always be doubt whether he can make a truly disinterested determination that his own firm, no matter what its overall merit, is best qualified to be his counsel in the circumstances of the particular case.

*Id.* at 168 (emphasis added).[15] Citing *Haupt*, Druker argues that the bankruptcy court should have invalidated the Settlement because it does not "seem right." Druker does not, however, take issue with Judge Buschman's findings as to the fairness of the Settlement. Rather, he contends that procedural infirmities—namely Green's pre- and post-settlement conduct—tarnish the Agreement. Druker's contentions notwithstanding, Green's actions were logical, justified, and within his powers as interim trustee. Judge Buschman's conclusion that the Settlement "seems right" merits affirmance.

### 1. The Authority of the Interim Trustee

■ Druker contends that Green exceeded his authority as interim trustee by entering into the Settlement. This alleged impropriety is cited as support for the proposition that the Settlement does not "seem

---

**14.** Druker is disqualified from voting under all three tests of Section 702(a) of the Bankruptcy Code. *See supra* note 5. As the owner of 50 percent of Carla's stock and president of the company, he is an insider, 11 U.S.C. § 101(25)(B)(i)–(iii) (1982). And, as a shareholder, he holds an interest materially adverse to the interests of other creditors. His interest is also materially adverse to those other creditors because he is a defendant in the suit that represents the only significant asset of the Carla

estate. Finally, Druker concedes that his claim is a contingent one.

**15.** The court declined to disqualify the counsel to the estate because "[t]he obvious detriment to the estate from ... making a change of general counsel would [have] far outweigh[ed] any theoretical possibility of benefit." *In re Haupt & Co.*, 361 F.2d 164, 169 (2d Cir.1966).

right." Druker's contentions in this regard are not persuasive.

"The interim trustee has the powers and duties and must comply with the same rules and regulations as a permanent trustee." 4 *Collier on Bankruptcy* ¶ 701.04 (L.King ed. 15th ed. 1985). Although typically the interim trustee will have "little involvement in the complex matters of a liquidation case," *id.*, and will "take little affirmative action until after the ... election or designation of a permanent trustee," *In re Killian Construction Co.*, 24 B.R. 848, 849 (Bankr.D.Idaho 1982), he can and should take further action when the circumstances demand such.

The unique circumstances of this case, particularly exigencies of time, warranted Green's action. In early June 1984, two defendants to the Meritum action notified this Court that they would seek a stay of that action pending the outcome of the Carla proceeding. A stay promised to indefinitely deprive the Meritum estate of its largest single asset. The Carla estate was in a similarly precarious position. With only $2,500 in assets, it could not pursue any of Carla's claims. Logic suggested that the Carla and Meritum estates join forces and develop a solution. When Green agreed to a settlement on June 22, prior to a conference scheduled by the Court to discuss a possible stay, he acted prudently and within his authority. Judge Buschman did not err in so holding.

### 2. The Appearance of Impropriety

On this appeal, all of the parties appear to accept Judge Buschman's finding that the record is barren of any evidence of an entangling alliance between Green and the Meritum estate.[16] Druker has, however, renewed his contention that the appearance of a tacit understanding between Green and the Meritum estate, whereby Meritum exchanged its vote for Green's agreement to settle, taints the Settlement.

As noted above, Green had good reason to settle when he did. The possibility of a stay, not the pendency of an election, best explains his conduct. The presence of this ulterior motive absolves Green of appearing to have "sold his birthright." The impracticability of alternative courses of conduct further supports the propriety of Green's actions. Only by declining the nomination as Carla's trustee could Green have avoided any suggestion of a tacit agreement. For Green, a qualified candidate thoroughly familiar with the Meritum and Carla estates, to have declined would have been to shirk his duty to the Carla estate and its creditors.

### 3. The Adequacy of the Investigation

Druker also charges that Green's investigation prior to the Settlement was inadequate. Neither the case law nor the Bankruptcy Code require a trustee to expend a particular modicum of effort investigating the bankrupt's affairs. In each case, the trustee must balance the costs and time associated with a thorough investigation against the need to proceed with due haste. Applying this standard, Judge Buschman found the Carla trustee's investigation "more than adequate." *In re Carla Leather, Inc., supra*, 44 B.R. at 472. The Court has reviewed the record, which discloses Green's legal research as well as the research of his accountants, who confirmed the amount of Meritum's outstanding claims against Carla, and cannot fault Judge Buschman's finding. The conduct of the investigation neither fosters an inference that the Agreement does not "seem right" nor provides an independent basis for jettisoning the Agreement.

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) ("*Anderson*"), relied on by the appellant, does not counsel a contrary conclusion. In that opinion, the Supreme Court reversed a district court order ap-

---

**16.** Druker himself has repeatedly stated that he has "no intimation whatsoever" that the Carla trustee "sold his birthright" in return for Meri-

tum's vote. *In re Carla Leather, Inc., supra*, 44 B.R. at 473.

proving a plan of reorganization. The Court then remanded the case to the district court. The Supreme Court rested its holding on the district court's complete failure to examine the agreement. It noted that

> [t]he record before us leaves us completely uninformed as to whether the trial court ever evaluated the merits of the causes of actions held by the debtor, the prospects and problems of litigating those claims, or the fairness of the terms of compromise. More than this, the record is devoid of facts which would have permitted a reasoned judgment that the claims of actions should be settled in this fashion. In reaching this conclusion, however, it is necessary to emphasize that we intimate no opinion as to the merits of the debtor's causes of action or as to the actual fairness of the proposed compromises. To the contrary, it is clear that the present record is inadequate for assessing either, and that a remand is necessary to permit further hearings to be held. Only after further investigation can it be determined whether, and on what terms, these claims should be compromised.

*Id.* at 440–41, 88 S.Ct. at 1171–72. Although the Court mentioned the inadequacy of the trustee's investigation,[17] the district court's failings underlay the holding.

This case is not even remotely similar to *Anderson*. Here, the bankruptcy court issued a thorough and well-reasoned opinion approving the Settlement. We thus have the benefit of a full record on appeal. *Anderson* does not counsel a remand to the bankruptcy court in these circumstances. More importantly, it does not even autho-

rize the relief Druker requests: the out-and-out jettisoning of a settlement agreement.

It follows from our conclusions that Green did not exceed his authority as Carla's interim trustee, that his investigation was adequate, and that his conduct does not appear improper, that the Settlement "seems right." [18] Affirmance of Judge Buschman's findings on that score is, therefore, appropriate.[19]

## C. *Disqualification of the Permanent Trustee*

■ Druker's alternative contention is that even if the Settlement is approved, the Court should disqualify Green in favor of a disinterested person. Section 15324 of the Bankruptcy Code, the parallel in pilot districts to section 324 in non-pilot districts, sanctions the removal of a trustee "for cause." 11 U.S.C. § 15324 (1982). There is little if any law on section 15324. Absent such guidance, the Court must look to section 324. Among the several grounds for removing a bankruptcy trustee under that section is the trustee's violation of "the fiduciary duty he owe[s] to the estate by acting for his own benefit and enrichment." 4 *Collier on Bankruptcy, supra,* at ¶ 324.02. Druker asserts that Green should be disqualified on this ground.

Druker's argument is at least as unavailing in this context as it is in his attempt to void the Settlement. As the Court has already taken pain to note, Green's conduct as Carla's trustee has evinced neither the actuality nor the appearance of impropriety. Judge Buschman's decision not to disqualify Green was entirely appropriate.

---

**17.** After an initial investigation, the trustee in *Anderson* asserted strong defenses to the claims of certain creditors. He subsequently reversed field without investigating or providing an explanation. *Anderson,* 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968).

**18.** Druker's papers also assert that the Agreement does not "seem right" because Meritum was disqualified from voting for Carla's trustee under section 702 of the Bankruptcy Code. *See supra* notes 5 and 15. The logic of this argument escapes the Court. If Meritum was dis-

qualified from voting, then Green could not have acquiesced in exchange for Meritum's vote. That Meritum actually voted is irrelevant. Moreover, the propriety of its vote is not a question which the Court can or should consider.

**19.** In his papers, Druker stated that if the Court rejected the Agreement, it should also disqualify Cleary, Gottlieb as Carla's counsel. The Court has not rejected the Agreement and, therefore, need not consider this request.

## D. *The Constitutional Challenges*

■ In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Northern Pipeline"*), the Supreme Court invalidated the adjudication by the bankruptcy court, a non-Article III court, of certain state-created rights. The Supreme Court did not invalidate the bankruptcy court's right to pass on certain matters internal to the administration of a liquidation proceeding. To remedy the constitutional infirmities in the prior scheme of bankruptcy adjudication, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C.A. §§ 151–58 (West Supp.1985) (the "new Act"). The appellant contends that the new Act, both on its face and as applied, runs afoul of the constitutional doctrines that *Northern Pipeline* emphasized.

Section 157 of this act, 28 U.S.C.A. § 157 (West Supp.1985), regulates the jurisdiction of the bankruptcy courts. Section 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section and may enter appropriate orders and judgments, subject to review under section 158...." 28 U.S.C.A. § 157(b)(1) (West Supp.1985). Section 157(b)(2) delineates fifteen classes of core proceedings. These are proceedings over which the bankruptcy court could constitutionally exercise jurisdiction under the former bankruptcy code. *See Northern Pipeline,* 458 U.S. at 58–62, 102 S.Ct. at 2864–67 (Brennan, J., for the plurality); *id.* at 91–92, 102 S.Ct. at 2881–82 (Rehnquist, J., concurring); *id.* at 100–03, 102 S.Ct. at 2886–88 (White, J., for the dissent). Each of the matters addressed by Judge Buschman—review of a compromise agreement, of an election dispute, and of the qualifications of a trustee to hold office—is a "core proceeding." The bankruptcy court did not act unconstitutionally when it issued the orders that the Court now reviews.

Druker's broad-based attack on the jurisdiction of the bankruptcy courts fares no better. Section 157(c)(1) of the new Act delineates the bankruptcy court's jurisdiction over non-core proceedings. This section reads as follows:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C.A. § 157(c)(1) (West Supp.1985). The ultimate decisionmaking authority over proceedings that the Court in *Northern Pipeline* held could not be vested in the bankruptcy courts now lies with the district courts. Only the district court can enter findings of fact and conclusions of law in these non-core matters. Jurisdiction is no longer vested, as it was prior to *Northern Pipeline*, in judges without life tenure lacking the attributes of Article III judges. Druker's *Northern Pipeline* challenge must, therefore, fail.

■ Equally lacking in merit is Druker's constitutional challenge to the appointment of Judge Buschman, and all other bankruptcy judges, pursuant to the new Act. The plaintiff's argument appears to be that raised in *In re Benny,* 44 B.R. 581 (N.D.Ca. 1984) (*"Benny"*). Those attacking the new Act in *Benny* argued that the terms of bankruptcy judges expired on June 27, 1984, and that Congress was without power to retroactively appoint the former bankruptcy judges to their previous posts without nomination by the President and approval by the Senate. The District Court for the Northern District of California emphatically rejected this argument. The court held that all bankruptcy judges were entitled to perform their duties because either (i) the bankruptcy judges were in office on July 10, 1984, the date the new

Act became effective, and were thus continued in office pursuant to the new Act, a power concededly within legislative power; or (ii) even if the terms of bankruptcy judges expired on June 27, 1984 (the termination date of the transition period under the Bankruptcy Reform Act of 1978, pursuant to which all bankruptcy judges in office in 1978 were automatically continued in office), the new Act retroactively extended the terms of bankruptcy judges. This was within Congress' undoubted authority to create an office, establish and modify its scope and term, and designate officers previously appointed by the judiciary to remain in office. *Id.* The *Benny* court's reasoning persuades us to reject Druker's final constitutional challenge.

## III. CONCLUSION

The orders of the bankruptcy court are affirmed.

SO ORDERED.