### In re METRO SHIPPERS, INC., Debtor.

### Ernest R. VARALLI, Trustee, Plaintiff,

### v.

### PTL INTERMODAL, Defendant.

Bankruptcy No. 85–01934F.
Adv. No. 88–1027F.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 6, 1989.

---

Robert Szwajkos, Rubin Quinn Moss & Heaney, Philadelphia, Pa., for the defendant/movant, PTL Intermodal.

Michael J. Halprin, Lawrence J. Tabas, Spector Cohen Gadon & Rosen, Philadelphia, Pa., for plaintiff, Ernest R. Varalli, Trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Defendant, PTL Intermodal, has moved to dismiss this adversary proceeding to recover a preference based upon defendant's belief that it was commenced beyond the limitations period set out in 11 U.S.C. § 546(a). 11 U.S.C. § 546(a) states:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
>
> (2) the time the case is closed or dismissed.

Defendant argues that this proceeding, brought under 11 U.S.C. § 547, was initiated more than two years after the trustee's "appointment" [1] under 11 U.S.C. § 702. The trustee contends that suit was brought in a timely fashion. This dispute, to some extent, follows from a prior decision in this chapter 7 bankruptcy case, *In re Metro Shippers, Inc.*, 63 B.R. 593 (Bankr.E.D.Pa. 1986).

### I.

An involuntary chapter 7 bankruptcy petition was filed against this debtor on May 14, 1985. On July 8, 1985, an order for relief was entered by my predecessor, former Chief Bankruptcy Judge Goldhaber and on September 13, 1985, Fred Zimmerman was appointed interim trustee by

---

1. Courts have noted that a trustee is not "appointed" under § 702 (compared with 11 U.S.C. § 701, *see Matter of Killian Constr. Co.*, 24 B.R. 848, 849 (Bankr.D.Idaho 1984)) unless the word "appointment" is broadly defined. *In re Black & Geddes, Inc.*, 35 B.R. 827, 829 (Bankr.S.D.N.Y. 1983).

Judge Goldhaber pursuant to 11 U.S.C. § 701.

On May 8, 1986, a creditors' meeting was held in accordance with 11 U.S.C. § 341. As noted in the earlier opinion, 63 B.R. at 595, eight unsecured creditors voted at that meeting to elect Carl Helmetag, Esquire permanent trustee pursuant to 11 U.S.C. §§ 702, 705. The interim trustee challenged the election of Mr. Helmetag as permanent trustee and a motion for resolution of the election dispute was then filed, in accordance with Bankr.R. 2003(d). On August 5, 1986, the dispute was resolved with the entry of an order validating the election of Mr. Helmetag.

Mr. Helmetag subsequently died and the instant trustee, Mr. Varalli, was chosen successor trustee pursuant to 11 U.S.C. § 703. Mr. Varalli then filed this preference proceeding against this defendant on August 5, 1988.

## II.

■ As raised by the parties, the sole issue is whether the two year limitations period runs from May 8, 1986, the date of the meeting of creditors and the disputed election of Mr. Helmetag, or whether it runs from August 5, 1986, the date of the order resolving the election dispute.[2] This appears to be an issue of first impression.

The positions of the litigants may be summarized quickly. The defendant asserts that a permanent trustee is elected, by virtue of § 702, at the § 341 meeting and that § 546(a)(1) refers to this election as the operative date for commencing the limitations period. Conversely, the trustee focuses upon the language of Bankr.R. 2003(d) which states:

(d) Report to the Court. The presiding officer shall transmit to the court the name and address of any person elected trustee or entity elected a member of a creditors' committee. If an election is disputed, the presiding officer shall promptly inform the court in writing that a dispute exists. *Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. If no motion for the resolution of such election dispute is made to the court within 10 days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.*

(emphasis added).[3]

The trustee argues that until the election dispute was resolved, Zimmerman remained interim trustee and there was no permanent trustee. Indeed, former counsel to Mr. Zimmerman testified at the hearing on the instant motion that Mr. Zimmerman continued to act as interim trustee, was represented by counsel, and initiated litigation during the period that the election dispute was pending—May 8, 1986 to August 5, 1986.

## A.

Disputes concerning 11 U.S.C. § 546(a)(1) have noted its scanty legislative history and its ambiguous language. *In re Afco Dev. Corp.*, 65 B.R. 781 (Bankr.D.Utah 1986). Relying on the statutory reference made in subsection 546(a)(1) to section 702, the distinction in function between the interim trustee and the permanent trustee, and keeping an eye toward the origin of limitations provisions in bankruptcy, courts

---

**2.** Defendant does not suggest that the limitations period began prior to the creditors' meeting; nor does it challenge the timeliness of this complaint if the two year period began August 5, 1986. *See In re Black & Geddes, Inc.* (complaint filed June 29, 1983 and § 341 meeting held on June 29, 1981); *In re Modern Mix, Inc.*, 33 B.R. 543 (Bankr.S.D.Ala.1983) (complaint filed on October 20, 1982; § 341 meeting held on October 20, 1980). The trustee does not assert that the two year period began when the successor trustee was appointed. *See In re Chequers, Ltd.*, 59 B.R. 177, 178 (Bankr.W.D.Pa.

1986) (appointment of successor trustee does not extend limitations period).

**3.** Defendant's suggestion in its memorandum of law at 2 that Rule 2003(d) was first effective August 1, 1987, subsequent to this election dispute, is wrong. Except for a minor amendment adding the phrase "entity elected", Rule 2003(d) became effective August 1, 1983 by order of the Supreme Court dated April 25, 1983. *See In re Carla Leather, Inc.*, 50 B.R. 764, 770 (S.D.N.Y. 1985) (referring to Rule 2003(d)); 8 *Collier on Bankruptcy* ¶ 2003.02 (15th ed. 1988).

have uniformly concluded that the two year limitations period established in § 546(a)(1) for initiating certain litigation, such as preference litigation under § 547, begins with the election of the permanent trustee. *Id.; In re North American Dealer Group, Inc.*, 62 B.R. 423, 426 (Bankr.E.D.N.Y. 1986); *In re Chequers, Ltd.*, 59 B.R. 177 (Bankr.W.D.Pa.1986); *Matter of Hecht*, 54 B.R. 379, 382 (Bankr.S.D.N.Y.1985), *aff'd*, 69 B.R. 290 (S.D.N.Y.1987); *In re Outlet Dept. Stores, Inc.*, 49 B.R. 536 (Bankr.S.D.N.Y.1985); *In re Sin–Ko Inc.*, 48 B.R. 180 (Bankr.N.D.Ohio 1985); *In re Black & Geddes, Inc.*, 35 B.R. 827 (Bankr.S.D.N.Y. 1983); *In re Modern Mix, Inc.*, 33 B.R. 543, 546 (Bankr.S.D.Ala.1987); *Matter of Killian Constr. Co.*, 24 B.R. 848 (Bankr.D.Idaho 1984).

Most relevant to this dispute is the recognition that the function of the interim trustee differs from that of the permanent trustee. Although both are trustees, with the powers the Code provides to trustees, *see In re Carla Leather, Inc.*, 50 B.R. 764, 773 (S.D.N.Y.1985), there is a significant difference in functions:

> The function of the interim trustee is to protect the assets of the estate and to perform all administrative tasks that are necessary until the duly elected trustee or designated trustee is qualified.

4 *Collier on Bankruptcy* ¶ 701.04 (15th ed. 1988). *Accord, e.g., Matter of Killian Constr. Co.*, 24 B.R. at 849. Because of the "caretaker" role of interim trustee, *In re Black & Geddes, Inc.*, 35 B.R. at 827, courts have refused to impose upon this position the obligation to conduct both a full investigation and any necessary litigation that would be required if the two year limitations period began while the interim trustee was in office. *See Matter of Killian Constr. Co.*, 24 B.R. at 849–50.

### B.

The purpose behind Bankr.R. 2003(d) is to resolve quickly all trustee election disputes. *In re Carla Leather Inc.*, 50 B.R. at 770. As was noted in a discussion of both Rule 2003(d) and its identical counterpart in pilot districts utilizing a U.S. Trustee, Rule X–1006(c):

> By requiring the motion to be made quickly and providing that the interim trustee shall continue to serve in the event that the motion is not made within the ten day period, these rules seek to limit such disputes and allow the bankruptcy proceeding to continue with the trustee, whoever he or she may be, moving forward in marshalling [sic] the assets of the estate.

*In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr.S.D.N.Y.1984), *aff'd*, 50 B.R. 764 (S.D.N.Y.1985).

Not only does this bankruptcy rule aid in the prompt resolution of disputes by requiring that the dispute be raised within ten days of the election, 50 B.R. at 770–71, it also assures continuity of administration by resolving the problem of the trustee's identity during the pendency of the dispute. Having two individuals asserting the powers of the trustee would create administrative havoc; thus it was necessary to designate one to serve as trustee until the dispute was resolved. Allowing a "permanent" trustee to assume office with the knowledge that the individual might soon be displaced if the challenge to the election were sustained is similar to having an interim trustee. "An interim trustee will generally take little affirmative action" as he or she "is faced with the clearly presented possibility of replacement...." *Matter of Killian Constr. Co.*, 24 B.R. at 849–50. Thus, the rule sensibly allows the interim trustee to remain in place until the dispute is decided.

 It follows that if the limitations period in § 546(a)(1) does not begin while the interim trustee is in office, the limitations period also does not begin to run when there is an election dispute pursuant to 11 U.S.C. §§ 702, 705, and Bankr.R. 2003(d). Until that dispute is resolved, and a permanent trustee determined, there is no trustee with permanent authority to act.[4] Thus, here the limitations period un-

---

**4.** I do not view *In re Chequers, Ltd.* as concluding otherwise. Although the memorandum opinion states that the limitations period "runs from the § 341 meeting in which the creditors

der § 546(a)(1) did not begin until August 5, 1986, the date of the order upholding the election.[5]

The motion to dismiss must therefore be denied.

---

have an opportunity to elect the chapter 7 trustee," 59 B.R. at 178, the court was not faced with an election challenge. Absent such a challenge, there will be a permanent trustee chosen at the creditors' meeting. (One will either be elected under § 702(c), or the interim trustee will become permanent under § 702(d)). Therefore, if there is no challenge raised under Rule 2003(d), the limitations period runs from the creditors' meeting.

**5.** Although 11 U.S.C. § 322 requires a trustee to post a bond in order to qualify as trustee, courts have long held that actions taken by a trustee prior to posting the bond are valid. *See Sharfsin v. United States,* 265 F. 916 (4th Cir.1920); *In re Martinez,* 355 F.Supp. 650 (D.P.R.1972), *aff'd mem.,* 502 F.2d 1158 (1st Cir.1972); *In re Holiday Isles, Ltd.,* 29 B.R. 827 (Bankr.S.D.Fla.1983); *In re Upright,* 1 B.R. 694 (Bankr.N.D.N.Y.1979). Therefore, the limitations period runs from the time there is a permanent trustee in office, rather than from the time the trustee is qualified. *In re Afco Dev. Corp.,* 65 B.R. at 785.