**QANTEL CORPORATION, Plaintiff,**

v.

**Karl H. NIEMULLER, Christl Niemuller and Goodwood Management Services, Inc., Defendants.**

No. 91 Civ. 0371 (PKL).

United States District Court, S.D. New York.

Aug. 21, 1991.

Ohrenstein & Brown, New York City (Michael D. Brown, Christopher B. Hitchcock, Peter J. Biging, of counsel), for plaintiff.

Boyle, Vogeler & Haimes, New York City (Charles D. Schmerler, David S. Hoffner, Gary S. Lee, of counsel), for defendants.

## OPINION AND ORDER

LEISURE, District Judge:

This is an action asserting numerous claims arising from defendants' activities in connection with the operation and management of plaintiff Qantel Corporation. Defendants have now moved: 1) to dismiss the amended complaint,[1] pursuant to Fed. R.Civ.P. 12(b)(2), for lack of personal jurisdiction over defendants Christl Niemuller and Goodwood Management Services, Inc.; 2) to dismiss those claims alleging harm to Qantel Canada, Inc. for lack of standing; 3) to dismiss plaintiff's Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, ("RICO") claim, pursuant to Fed.R.Civ.P. 9(b), for failure to plead the predicate acts of wire fraud with particularity, and pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted; and 4) to dismiss plaintiff's conspiracy to defraud claim, pursuant to Fed.R.Civ.P. 9(b), for failure to plead fraud with particularity. For the reasons set forth below, defendants' motion is granted in part, and denied in part.

## BACKGROUND

Plaintiff Qantel Corporation ("Qantel") is a New York corporation with its principal place of business in California. Qantel is a holding company engaged in the design, development, manufacture and marketing of computer equipment through its wholly-owned subsidiaries MDS Capital Corporation ("MDS Capital") and Qantel Business

Systems, Inc. ("Qantel Business"). MDS Capital, in turn, owns Qantel Canada, Inc. ("Qantel Canada"). Defendants Karl H. Niemuller ("Karl") and Christl Niemuller ("Christl") (collectively "the Niemullers") are residents of Canada, and are married to each other. Defendant Goodwood Management Services, Inc. ("Goodwood") is a Canadian corporation with it principal place of business in Ontario, Canada. Goodwood is jointly owned by the Niemullers, and Christl is its President and sole director.

Prior to March 1, 1983, the Niemullers owned C.T.S. Computer Systems, Inc. ("CTS"), a Canadian corporation licensed as a distributor of computer systems manufactured by Qantel Business. The Niemullers also owned Goodwood, which purchased computer equipment for lease to other businesses. On March 1, 1983, Qantel purchased CTS from the Niemullers, and CTS was renamed "Qantel Canada, Inc." In connection with the sale, Karl was hired as President and a director of Qantel Canada, positions in which he remained though December 7, 1990. Karl subsequently also served as Qantel's Vice President of Corporate Marketing from October 30, 1985 through January 8, 1986, as Qantel's Executive Vice President from January 8, 1986 through January 2, 1990, as Qantel's Chief Operating Officer from March 20, 1986 through December 7, 1990, and as Qantel's President and Chief Executive Officer from January 2, 1990 until his resignation on December 7, 1990. Karl was also a member of Qantel's Board of Directors from September 17, 1987 through December 13, 1990.

The amended complaint in this action alleges that the defendants—and, in particular, Karl—engaged in certain misleading and fraudulent conduct in connection with the business activities of Qantel and Qantel Canada. Specifically, Qantel avers that the defendants conspired to have Karl, as President of Qantel Canada, use his position to direct subordinate Qantel Canada employees to accept improperly over a five-year period the assignment from Goodwood of

---

**1.** The original complaint in this action was amended to add claims against defendants

Christl Niemuller and Goodwood Management Services, Inc.

numerous equipment leases that had been entered into by Goodwood (the "Goodwood Leases"). The amended complaint alleges that the Goodwood Leases were assigned to, and accepted by, Qantel Canada, without recourse, for amounts in excess of their fair value, and despite the Niemullers' knowledge of "facts indicating" that collection of future lease payments on some or all of the Goodwood Leases would be difficult or impossible. The amended complaint further alleges that Karl breached his fiduciary duties as a senior officer and director of Qantel by concealing and affirmatively misrepresenting his interest in the company—Goodwood—from which Qantel Canada purchased the Goodwood Leases.

In addition, Qantel seeks redress for Karl's alleged use of his positions as a senior officer and director of Qantel, and as President of Qantel Canada, to obtain improperly payment of certain personal expenses by Qantel Canada. The amended complaint alleges that Karl sought and obtained reimbursement from Qantel Canada of $10,000 in personal income taxes and almost $36,000 in closing costs incurred in the sale of the Niemullers' home, by submitting false expense reports to Qantel Canada identifying those expenses as "business expenses." The amended complaint also alleges that Karl obtained reimbursement from Qantel Canada for approximately $85,000 in other, unidentified, personal expenses by similarly submitting false expense reports.

Qantel also claims that Karl abused his positions of trust by directing the Qantel Canada payroll department to add two hundred hours to his Qantel vacation accrual balance. Karl thereafter allegedly directed his subordinates at Qantel Canada to mail the falsified records to Qantel's Chief Financial Officer, seeking and obtaining $24,000 from Qantel for the "unused accrued vacation time."

Finally, the amended complaint avers that by virtue of Karl's alleged concealment of his involvement, with Christl, in Goodwood and the Goodwood Lease transactions, and his concealment of the other above-described actions in breach of Karl's fiduciary duties to Qantel and Qantel Canada, Qantel was fraudulently induced to enter into certain agreements with Karl in the belief that he was a loyal, honest and faithful employee. In particular, Qantel entered into an employment agreement dated January 2, 1990, whereby Qantel agreed to employ Karl as its President and Chief Executive Officer at a salary of $250,000, and an agreement, dated August 2, 1989, entitling Karl to the payment by Qantel of $375,000 upon his resignation. The amounts of $250,000 and $375,000 have been paid to Karl by Qantel pursuant to these agreements.

Qantel seeks recovery against Karl alone for breach of fiduciary duty, fraud, negligent misrepresentation, rescission, manipulation of a corporation, breach of contract, and violation of RICO. In addition, the amended complaint contains claims of conspiracy to defraud as against all defendants, tortious interference with business relations as against Christl and Goodwood, and monies had and received as against Karl and Goodwood.

## DISCUSSION

### I. Personal Jurisdiction Over Christl and Goodwood

The first branch of defendants' motion seeks dismissal of the amended complaint as against Christl and Goodwood on the ground that this Court lacks personal jurisdiction over those defendants. It is undisputed that Christl is a Canadian citizen and Goodwood a Canadian corporation, and that neither Christl nor Goodwood performed any act within New York that could give rise to this Court's jurisdiction over either one of them. Indeed, the amended complaint contains only two references to acts involving New York: a Qantel Board of Directors meeting in 1987, and Karl's mailing of responses to a questionnaire to Qantel's attorneys in New York in which he allegedly failed to disclose his interest in Goodwood.

In this action, where the claims against Christl and Goodwood are state law claims, personal jurisdiction over them

is determined by reference to the law of the jurisdiction in which the court sits. The burden of establishing jurisdiction over a defendant, by a preponderance of the evidence, is upon the plaintiff. Until an evidentiary hearing is held, however, the plaintiff need make only a prima facie showing that jurisdiction exists, and this remains true not withstanding a controverting presentation by the moving party. In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits; all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubt exist, they are resolved in the plaintiff's favor.

*Hoffritz For Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985) (citations omitted).[2] Section 302 of the New York Civil Practice Law and Rules ("CPLR") embodies New York's personal jurisdiction "long-arm" rules.

■ Qantel argues that this Court has jurisdiction over Christl and Goodwood pursuant to CPLR § 302(a)(2), which provides in relevant part that "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... commits a tortious act within the state." It has been held that under this provision "the acts of a co-conspirator within the state may be attributed to an out-of-state defendant for the purpose of obtaining personal jurisdiction over that defendant, on the theory that the co-conspirator is carrying out activities in New York pursuant to the conspiracy." *Grosser v. Commodity Exchange, Inc.,* 639 F.Supp. 1293, 1308 (S.D.N.Y.1986) (citation omitted), *aff'd without op.,* 859 F.2d 148 (2d Cir.1988). To allege a conspiracy, facts must be alleged showing an agreement to enter into the conspiracy, the non-domiciliary's participation in the conspiracy and acts in furtherance thereof, and a connection between the non-domiciliary and the allegedly tortious acts committed in New York. *See*

*Grosser, supra,* 639 F.Supp. at 1308–09; *Soltex Polymer Corp. v. Fortex Industries, Inc.,* 590 F.Supp. 1453, 1463 (E.D.N.Y.1984), *aff'd,* 832 F.2d 1325 (1987). It is well settled that " 'the bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of section 302(a)(2).' " *Grosser, supra,* 639 F.Supp. at 1308 (quoting *Lehigh Valley Industries v. Birenbaum,* 527 F.2d 87, 93–94 (2d Cir.1975)).

■ Qantel bases its argument that Christl and Goodwood may be forced to defend in this Court on the following chain of inferences: Christl had knowledge of facts indicating that collection of future payments on some or all of the Goodwood Leases would be difficult or impossible, therefore Christl knew or should have known that the Goodwood Leases were assigned to Qantel Canada for amounts in excess of their fair value, therefore it can be inferred that the Niemullers conspired to defraud Qantel by carrying out the Goodwood Lease transactions. In addition, Qantel argues, it must be presumed that Christl knew or should have known that Karl had a fiduciary duty under Canadian law to reveal the Goodwood Lease transactions, that Christl knew or should have known that Karl would not do so, that Christl knew that Karl attended meetings in New York, and that Christl therefore knew or should have known that Karl would breach his fiduciary duty to Qantel in New York, thereby committing a tortious act within this state. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the complaint at 31–41.

The simple recitation of this argument reveals its infirmities: the chain of inferences is too weak and too long to sustain the exercise of jurisdiction over Christl and Goodwood. First, there is insufficient evidence to support the inference that Christl knew or should have known that the Goodwood Leases were assigned at an inflated

---

**2.** No evidentiary hearing had been held by the Court with respect to the issue of personal juris-

diction in this case.

value, and the amended complaint makes no such allegation.[3] Second, the evidence that is before the Court constitutes no more than the "bland assertion of conspiracy" that the Second Circuit held to be insufficient. *Lehigh Valley Industries,* 527 F.2d at 93. Even the basic allegation of an agreement between Karl and Christl is lacking. Third, the Court fails to see how Christl's presumed knowledge of Canadian law is relevant to her actual or imputed knowledge of the legal consequences of Karl's actions under New York law. There is thus no evidence that Christl knew or should have known that Karl would commit any tortious act under *New York* law by not disclosing the Goodwood Lease transactions.[4]

Moreover, the allegations and evidence regarding Christl's activities fail to demonstrate that she " 'purposefully avail[ed] [her]self of the privilege of conducting activities within the forum State, thus invoking the benefits and the protection of its laws.' " *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). On the contrary, Christl's only act in connection with the Goodwood Lease transactions appears to have been signing the agreements somewhere outside New York state, with no particular awareness that by doing so she might "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "[A]ttaining the rather low floor of foreseeability necessary to support a finding of tort liability is not enough to support *in personam* jurisdiction. The person sought to be charged must know, or

have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him." *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1341 (2d Cir.1972). The exercise of personal jurisdiction over Christl and Goodwood would offend "our traditional conception of fair play and substantial justice," *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945), and thus is impermissible under the Due Process Clause. Accordingly, defendants' motion to dismiss the amended complaint as against Christl and Goodwood, for lack of personal jurisdiction over those defendants, is granted.

## II. *Qantel's Standing*

The second branch of defendants' motion attacks Qantel's standing to assert claims alleging injury to Qantel Canada. The principle of standing

"requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.' "

*Southside Fair Housing Committee v. City of New York,* 928 F.2d 1336, 1341 (2d Cir.1991) (citations omitted) (quoting *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). The gist of defendants' standing argument is that Qantel is seeking to recover, at least in part, for harm to Qantel Canada, and that Qantel lacks standing to do so.

---

**3.** An affidavit submitted by Karl states that Christl played no role in the valuation process, which was conducted by two other persons. Affidavit of Karl H. Niemuller, sworn to on May 28, 1991 ("Niemuller Aff."), ¶ 9. Indeed, the affidavit, which is uncontested by Qantel, states that Christl's only role in the Goodwood Lease transactions was to sign the agreements on behalf of Goodwood, due to her positions as Goodwood's sole director and officer. Niemuller Aff., ¶ 8.

**4.** In fact, Christl states in her affidavit that she did not even know Qantel was a New York corporation, and that she understood Qantel to be headquartered in New Jersey with most of its operations located in Hayward, California. Affidavit of Christl Niemuller, sworn to on May 28, 1991, ¶ 9.

In reality, there is less of a dispute as to this issue than the length of the parties' briefs—46 pages on this point alone—would suggest. In fact, Qantel concedes that it cannot recover for injuries suffered by Qantel Canada, arguing instead that it is not attempting to do so. The question is thus reduced to identifying the nature of the injuries for which Qantel seeks recovery from Karl.[5] With respect to those amounts allegedly paid directly by Qantel to Karl—which appear to be $250,000 in 1990 salary, $375,000 in severance payment, and $24,000 for unpaid accrued vacation time—it is clear that Qantel has standing to assert claims seeking to recover those amounts.

██ More difficult is the issue of whether, and, if so, to what extent, Qantel has standing to sue for less direct injuries caused to it as the indirect parent corporation of Qantel Canada. It is well established that " '[a]n "action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation" ' through a derivative action." *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir.1988) (quoting *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.) (quoting *Warren v. Manufacturers National Bank*, 759 F.2d 542, 544 (6th Cir.1985)), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986)), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989). It is also well established that an exception to this rule exists where the defendant owes the plaintiff shareholder a fiduciary duty, and the plaintiff seeks to recover for a breach of that duty that allegedly caused the plaintiff's shares to decline in value, such as the waste of the assets of the plaintiff's subsidiary. In such a case, the plaintiff parent shareholder has standing to recover for that decline in value, despite the fact that the subsidiary corporation may itself have a claim against the defendant for the direct injury to it. *See Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118–19 (2d Cir.1975);

*Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F.Supp. 127, 136–37 (S.D.N.Y.1988); *Cravatts v. Klozo Fastener Corp.*, 15 F.R.D. 12, 13–14 (S.D.N.Y.1953) (Weinfeld, J.); *Abrams v. Donati*, 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 783, 489 N.E.2d 751, 752 (1985); *General Rubber Co. v. Benedict*, 215 N.Y. 18, 109 N.E. 96 (1915) (Cardozo, J.); 15 N.Y.Jur.2d, *Business Relationships* § 1010, at 271–72 (1981) ("A corporation may maintain an action against a director for violation of a duty that he owes to the corporation even where the violation consists of participating in the mismanagement of a subsidiary corporation, thus causing damage to the parent company by the depreciation of its stock held in the subsidiary corporation."). The defendant is thus "sued for the wrongful failure to preserve the value of the plaintiff's shares. Only to the extent that the taking has made the individual shares less valuable, has a liability arisen." *General Rubber, supra*, 215 N.Y. at 25, 109 N.E. 96.

In the case at bar it is undisputed that Karl, as a director and senior officer of Qantel, owed Qantel a fiduciary duty to act in Qantel's best interest. Defendants argue, however, that the exception permitting a parent to sue for the decline in value of a subsidiary's stock should be applicable only where the plaintiff parent is the *direct* parent of the subsidiary. Accordingly, defendants argue, Qantel should not have standing to sue for the decline in the value of Qantel Canada stock, because Qantel does not directly own shares of that stock.

However, the logic underlying the *General Rubber* line of cases is not so limited. Rather, those cases recognize that a single harmful act by a defendant directed at a subsidiary corporation may give rise to separate causes of action by both the subsidiary and the corporation to whom the defendant owes a fiduciary duty. That, as is the case here, the subsidiary is not a direct subsidiary of the plaintiff, but rather a

---

5. Given the Court's decision to dismiss this action as against Christl and Goodwood for lack of personal jurisdiction, the Court will not further consider Qantel's claims against those defendants.

wholly-owned subsidiary[6] of a wholly-owned subsidiary of the plaintiff, does not render the plaintiff without standing to sue for the injury it may have suffered. The question remains whether the plaintiff has suffered an actual or threatened injury as a result of the defendant's conduct, and whether the injury "fairly can be traced" to that conduct. *Southside Fair Housing, supra,* 928 F.2d at 1341. The Court believes that on the present record it cannot conclude that the answer to either of those questions is in the negative.

This analysis applies equally with respect to Qantel's standing to bring a RICO claim. Although the general rule again is that "[s]hareholders of a corporation do not have standing as individuals to bring a RICO action for diminution in the value of their stock caused allegedly by racketeering activities conducted against the corporation," *Sears v. Likens,* 912 F.2d 889, 892 (7th Cir.1990); *see also Rand, supra,* 794 F.2d at 849, an exception likewise applies where there exists a fiduciary relationship between the plaintiff and the defendant, and the plaintiff seeks to recover for RICO injuries to it distinct from those to the corporation. *See In re Sunrise Securities Litigation,* 916 F.2d 874, 880 (3d Cir.1990); *Sparling v. Hoffman Construction Company, Inc.,* 864 F.2d 635, 640 (9th Cir.1988); *Bankers Trust, supra,* 859 F.2d at 1101; *Crocker v. Federal Deposit Insurance Corp.,* 826 F.2d 347, 349 (5th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988); *Warren v. Manufacturers National Bank of Detroit,* 759 F.2d 542, 544 (6th Cir.1985) (quoting *Stevens v. Lowder,* 643 F.2d 1078, 1080 (5th Cir.1981)); *First City National Bank and Trust Co. v. Federal Deposit Insurance Co. [sic],* 730 F.Supp. 501, 514–15 (E.D.N.Y.1990); *Sound Video Unlimit-*

ed, *supra,* 700 F.Supp. at 136–37; *Nordberg v. Lord, Day & Lord,* 107 F.R.D. 692, 698 (S.D.N.Y.1985). Such is the case in the instant action.[7]

Accordingly, Qantel has standing to sue for damages to it that are attributable to the decline in the value of Qantel Canada's stock caused by Karl's alleged conduct. The amount of these damages, if any, is an issue to be resolved at trial, and, of course, could conceivably be well below the amount claimed in the amended complaint.

## III. Particularity and Sufficiency of the RICO Claim

### A. Particularity of the Wire Fraud Predicate Acts

Qantel's RICO claim is founded on allegations of predicate acts of mail fraud and wire fraud. Defendants have moved to dismiss the RICO claim on the ground that Qantel has failed to plead the predicate acts of wire fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

Rule 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

As in a motion to dismiss a claim pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff's allegations must be taken as true, *see Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986), and the Court must limit its consideration to those facts alleged on the face of the pleading. *See Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989); *Raffaele v. Designers*

---

**6.** Although the amended complaint states only that MDS Capital "owns" Qantel Canada, and that MDS Capital is a wholly-owned subsidiary of Qantel, defendants state in their brief that Qantel Canada is a "wholly-owned subsidiary of MDS Capital." Memorandum of Law of Defendants in Support of Their Motion to Dismiss the Complaint at 21. In either case, the result of this analysis is the same.

**7.** Viewed in this light, the Court believes that Karl's conduct forming the basis of the RICO claim was "a substantial factor in the sequence of responsible causation," and that the injury to Qantel was "reasonably foreseeable or anticipated as a natural consequence." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir.1990). This satisfies the proximate causation requirement for RICO standing purposes. *See Hecht, supra,* 897 F.2d at 23–24.

*Break, Inc.,* 750 F.Supp. 611, 612 (S.D.N.Y.1990).[8]

The pleading's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant to frame a response. *Ross v. A.H. Robins, Co.,* 607 F.2d 545, 557–58 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) is designed to provide the defendant fair notice of the plaintiff's claim so as to enable the defendant to prepare a suitable defense, to protect the defendant's reputation from harm, and to reduce the number of strike suits. *See Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990); *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Thus, "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentation." *DiVittorio, supra,* 822 F.2d at 1247; *see also Luce, supra,* 802 F.2d at 54.

Furthermore, "[a]lthough scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990) (quoting *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)). "A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so." *Beck, supra,* 820 F.2d at 50.

■ Qantel's allegation of wire fraud consists of the following: "Karl's acts of wire fraud consisted, *inter alia,* of numerous telephone calls from Karl in California to Qantel Canada's Controller, Sandra Ferguson, during the period February 1986 through December 1990, during which Karl directed Ferguson to assist Goodwood in consummating the Goodwood Lease transactions." Amended Complaint, ¶ 90. This averment is inadequate under Rule 9(b) for several reasons. First, Qantel must identify the actual number of telephone calls that were made, and the precise dates on which they occurred. Second, Qantel must allege the content of the conversations with greater particularity. Finally, Qantel must specify the nature of the assistance Karl requested, what form of assistance was in fact given and by whom, and how this assistance—and the telephone calls in general—furthered the allegedly fraudulent scheme. Therefore, Qantel's allegations of wire fraud as RICO predicate acts must be dismissed pursuant to Rule 9(b). Leave to replead is granted. *See Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990) (complaints dismissed pursuant to Rule 9(b) are "almost always" dismissed with leave to amend).

■ It is worth noting, however, that Qantel need not allege that the telephone calls themselves contained misrepresentations or that Qantel relied on those calls in some manner. *See Patrick Carter Associates, Inc. v. Rent Stabilization Association of New York City, Inc.,* 1990 WL 195993, 1990 U.S.Dist. LEXIS 15975 (S.D.N.Y.1990); *In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 513 (S.D.N.Y.1987). Rather, "[t]o plead the predicate offenses of mail and wire fraud, a plaintiff must allege ' "(1) a scheme to defraud, and (2) the use of the mails or interstate wires in furtherance of the fraudulent scheme." ' " *Galerie Furstenberg v. Coffaro,* 697 F.Supp. 1282, 1288 (S.D.N.Y.1988) (quoting *In re Gas Reclamation, supra,* 659 F.Supp. at 512 (quoting *Tryco Trucking Co. v. Belk Stores Services, Inc.,* 634 F.Supp. 1327, 1333 (W.D.N.C.1986))). The elements of misrepresentation and reliance are contained in paragraphs 32 through 41 of the amended

8. The Court will thus disregard the affidavits of Sandra Ferguson, sworn to on May 6, 1991, and Christopher B. Hitchcock, Esq., sworn to on May 7, 1991, submitted by Qantel in opposition to defendants' motion to dismiss the wire fraud predicate acts. The Court will also disregard the contentious exchange of letters those affidavits generated. In contrast, on a motion to dismiss for lack of personal jurisdiction, the Court is free to consider materials beyond the face of the complaint.

complaint, which are repeated and realleged in the RICO claim, and which defendants have not attacked as insufficient.

### B. Sufficiency of the RICO "Pattern" Allegations

■ Defendants also attack the sufficiency, under Federal Rule of Civil Procedure 12(b)(6), of Qantel's allegations of a RICO "pattern," on the ground that the amended complaint does not adequately allege RICO "continuity."

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980))).

Thus, a motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see also Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). In deciding a motion to dismiss, the Court must accept the plaintiff's allegations of fact as true, together with such reasonable inferences as may be drawn in his favor. *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Murray v. Milford*, 380 F.2d 468, 470 (2d Cir.1967); *Hill v. Sullivan*, 125 F.R.D. 86, 90 (S.D.N.Y.1989) ("all allegations in plaintiffs' amended complaint must be accepted as true and liberally construed."); *see also Scheuer, supra*, 416 U.S. at 236, 94 S.Ct. at 1686.

Nevertheless, the complaint must set forth enough information to suggest that relief would be based on some recognized legal theory. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y.1988) (Leisure, J.). "The District Court has no obligation to create, unaided by plaintiff, new legal theories to support a complaint." *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1081–82 (D.C.Cir.1984). "In practice 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory.'" *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984) (quoting *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir.1984) (Posner, J.) (emphasis in original) (quoting *French Quarter Apartments Ltd. v. Georgia–Pacific Corp.*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dism'd*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983))), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).

To state a claim under the RICO statute, a plaintiff must allege a "pattern" of racketeering activity, 18 U.S.C. § 1962(c), which is defined by the statute as two or more acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Determining whether a "pattern" exists within the meaning of the RICO statute is not, however, as simple as mechanically applying the definition provided by the statute. Rather, as the Supreme Court noted in *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), "while two acts are necessary, they may not be sufficient." More recently, the Supreme Court further expounded upon the pattern requirement in RICO cases, holding that "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original).

With respect to the "continuity" element of the test for a RICO "pattern," the Supreme Court has held that

> "[c]ontinuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*H.J. Inc., supra,* 492 U.S. at 241–42, 109 S.Ct. at 2902; *see also Azurite Corp. Ltd. v. Amster & Co.,* 730 F.Supp. 571, 581 (S.D.N.Y.1990) (predicate acts occurring over seven months do not establish continuity); *West Mountain Sales, Inc. v. Logan Manufacturing Co.,* 718 F.Supp. 1084, 1087 (N.D.N.Y.1989) (predicate acts occurring over four months do not establish continuity). In the instant case, the mail fraud predicate acts occurred within at most a few months of each other,[9] and the overall context in which those acts took place leaves the Court unpersuaded that the mailings were other than sporadic or isolated acts. *See United States v. Kaplan,* 886 F.2d 536, 542–43 (2d Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990). Therefore, Qantel has not sufficiently alleged "continuity" over a closed period.

The Supreme Court has recognized, however, that "[o]ften a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated." *H.J. Inc., supra,* 492 U.S. at 242, 109 S.Ct. at 2902 (emphasis in original). Whether the predicate acts alleged establish a threat of continued racketeering activity depends on the specific facts of each case. Such a threat may be shown, for example, where the related predicate acts themselves involve a clear threat of long-term racketeering activity, or where the predicate acts are part of an ongoing entity's regular method of doing business. *See H.J. Inc., supra,* 492 U.S. at 242, 109 S.Ct. at 2902. The complaint now before the Court does not, explicitly or by inference, allege a threat of repetition of the predicate acts that projects into the future. Indeed, the RICO scheme alleged in the amended complaint appears to depend on Karl's positions as a senior officer of Qantel and Qantel Canada, positions he no longer holds. Hence, the Court cannot find a demonstrated threat of continuity in the present averments in the amended complaint.

Because neither the closed- nor the open-ended concept of continuity has been sufficiently alleged in the complaint, Qantel has failed to allege adequately a RICO "pattern." *See H.J. Inc., supra,* 492 U.S. at 241–42, 109 S.Ct. at 2902; *USA Network v. Jones Intercable, Inc.,* 729 F.Supp. 304, 316–318 (S.D.N.Y.1990) (although plaintiff showed relatedness of predicate acts, plaintiff failed to plead facts demonstrating continuity, thus plaintiff did not establish a pattern of racketeering activity). A pattern of racketeering activity is a *sine qua non* of any RICO claim, *see Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), and thus the lack of that element mandates the dismissal of that claim. Accordingly, defendants' motion to dismiss Qantel's RICO claim is granted. Leave to replead this claim is granted to the extent that Qantel is able to replead the wire fraud predicate acts in compliance with Rule 9(b), as discussed above.

## IV. Particularity of the Conspiracy to Defraud Claim

Finally, defendants have moved pursuant to Rule 9(b) to dismiss the third claim in the amended complaint for failure

---

**9.** Because the Court has granted defendants' motion to dismiss the wire fraud predicate acts, it will not consider those in reviewing the sufficiency of Qantel's "pattern" allegations. *See Landy v. Mitchell Petroleum Technology Corp.,* 734 F.Supp. 608, 625 (S.D.N.Y.1990).

to plead conspiracy to defraud with particularity.[10] However, the Second Circuit has recently held that Rule 9(b) is not applicable to civil conspiracy claims. *Hecht, supra*, 897 F.2d at 26 n. 4. Accordingly, the Court will deem the motion made pursuant to Rule 12(b)(6),[11] and dismiss the claim on that basis for substantially the reasons stated above with respect to defendants' personal jurisdiction motion.[12]

However, because the Court cannot consider matters outside the pleadings on such a motion, *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991), the Court cannot consider the Niemullers' affidavits, and thus is unable to conclude based on the amended complaint alone that repleading would be futile. *See Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987) (quoting *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)) ("[a] motion to amend should be denied only for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'"); Fed. R.Civ.P. 15(a). Accordingly, leave to replead the conspiracy to defraud claim is granted.[13]

## CONCLUSION

For the reasons stated above, defendants' motion is granted in part, and denied in part, as follows: 1) defendants' motion to dismiss the amended complaint as against defendants Christl and Goodwood, for lack of personal jurisdiction, is granted; 2) defendants' motion to dismiss for lack of standing is denied, except to the extent Qantel seeks to recover for injuries other than those it has suffered either directly or as a result of a decline in the value of Qantel Canada stock; 3) defendants' motion to dismiss the RICO claim for failure to plead the predicate wire fraud acts with particularity, and for failure to plead adequately a RICO "pattern," is granted without prejudice; and 4) defendants' motion to dismiss the conspiracy to defraud claim for failure to state a claim is granted without prejudice.

SO ORDERED.

---

**10.** The standard by which the Court reviews a Rule 9(b) motion is fully discussed above.

**11.** The standard applicable to deciding a motion to dismiss under Rule 12(b)(6) has been discussed in detail above.

**12.** Specifically, the Court does not believe it can reasonably infer from the amended complaint the existence of a conspiratorial agreement.

**13.** Nevertheless, the Court reminds Qantel that repleading a claim known to be frivolous merits the imposition of sanctions under Fed.R.Civ.P. 11.