In re Donald R. BENNETT, Debtor.

Donald R. BENNETT and Robert E. Littlefield, Jr., as Chapter 12 Trustee, Plaintiffs,

v.

GENOA AG CENTER, INC., Richard Sharp, Sandra Sharp, Douglas Van Benschoten and Marjorie Van Benschoten, Farm Credit of Western New York, ACA, Defendants.

Bankruptcy No. 91–03017.
Adv. No. 92–60049A.

United States Bankruptcy Court, N.D. New York.

June 18, 1992.

Hinman, Howard & Kattell, Binghamton, N.Y., for debtor; M. Elizabeth Bradley, of counsel.

Williamson, Clune & Stevens, Ithaca, N.Y., for Genoa Ag Center, Inc., Richard Sharp, Sandra Sharp, Douglas Van Benschoten and Marjorie Van Benschoten; Robert J. Clune, of counsel.

Karpinski, Stapleton & Fandrich, P.C., Auburn, N.Y., for Farm Credit of Western New York, ACA; Mark H. Fandrich, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Presently before the Court in this adversary proceeding is the motion of Genoa Ag

Center, Inc. and its principals (collectively "Genoa") for dismissal of the Ninth Cause of Action set forth in the Amended Complaint filed by Debtor Donald R. Bennett and the Chapter 12 Trustee (collectively the "Plaintiffs") as modified by a proposed Second Amended Complaint, which alleges that Genoa, through the commission of various acts which ultimately resulted in the foreclosure and sale of Bennett's farm, violated provisions of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968) ("RICO"). Genoa maintains that the RICO cause of action should be dismissed for failure to state a claim upon which relief can be granted, and also for failure to plead fraud with particularity.

■ Genoa originally moved at once for summary judgment and dismissal of the Plaintiffs' First, Fourth, Fifth, and Ninth causes of action as set forth in the Amended Complaint. The Court heard oral argument on Genoa's motion on April 28, 1992, at which time it denied Genoa's motion as to the First, Fourth and Fifth causes of action, and reserved decision as to the Ninth cause of action, relating to RICO. Pending the issuance of that decision, Plaintiffs on June 2, 1992 filed a motion for leave to file a Second Amended Complaint, and requested that their proposed Second Amended Complaint be considered in conjunction with the Court's disposition of Genoa's motion for dismissal of the RICO cause of action. That motion was argued before the Court at Syracuse, New York on June 9, 1992, at which time Genoa appeared to offer no substantive objection to Plaintiffs' motion for leave to file their Second Amended Complaint. For the reasons set forth herein, Plaintiffs' motion for leave to file their Second Amended Complaint is granted.[1]

Additionally, Plaintiffs' Second Amended Complaint incorporates much of the Amended Complaint while purporting to cure perceived pleading defects in the Amended Complaint. Thus, for purposes of the present motion to dismiss, the Court will treat the Second Amended Complaint as having effectively superseded the Amended Complaint, and will rule accordingly.

## JURISDICTION

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1) and (b)(2)(O).

## ALLEGATIONS OF FACT

Plaintiffs allege the following:

Bennett is a farmer in Aurora, New York, where until recently he owned two farms. Both of these farms, as well as a parcel of land upon which Bennett's son resided, were subject to a mortgage held by Farm Credit of Western New York, ACA ("Farm Credit").

In the course of more than twenty-five years in the farming business, Bennett frequently purchased farm supplies from Genoa, often on credit. In 1990 Bennett began experiencing difficulty in making payments on the mortgage held by Farm Credit and on its credit account with Genoa. On July 11, 1990, Genoa obtained a default judgment ("judgment") against Bennett in the amount of $51,307.39. Bennett made a partial payment on the judgment in September, 1990. On October 1, 1990, however, Genoa placed a restraint upon Bennett's checking account, which had a balance of $21,307.39.

On October 5, 1990, the parties entered into an agreement whereby Genoa agreed to release the restraint on Bennett's checking account in exchange for 1) $5,000; 2) a mortgage and security agreement giving Genoa a lien against all of Bennett's property; and 3) a promissory note ("Note") in

---

1. Federal Rule of Civil Procedure ("Fed.R.Civ. P.") 15(a), made applicable herein by Federal Rule of Bankruptcy Procedure ("Fed.R.Bankr. P.") 7015, provides that leave to amend pleadings is to be freely given when justice so requires. The Court's attention has not been called to any undue delay or bad faith on the part of Plaintiffs, nor has it otherwise been suggested that Defendants will be prejudiced in any way by the filing of Plaintiffs' Second Amended Complaint. *See United States v. Continental Illinois Nat. Bank and Trust,* 889 F.2d 1248, 1254–1255 (2d Cir.1989); *In re Gunn,* 111 B.R. 291, 292 (9th Cir. BAP 1990).

the amount of $52,089.03 bearing interest at a monthly rate of 2% and compounded monthly.

The Note was to be paid in installments equal to 50% of the amount Bennett received for each sale of his crops. Specifically, Bennett agreed to the payment terms as follows:

> I agree to have the checks for the sale of such crops jointly payable to me and to Genoa Ag Center, Inc.; to deliver the said checks to Genoa Ag Center, Inc., properly endorsed by me, and with the understanding that I will receive 50% of the check amount back from Genoa Ag Center, Inc. when each said check clears Genoa Ag Center, Inc.'s bank account.

Bennett gave Genoa one such check for the sale of crops in the amount of $5,981.60 on January 5, 1991. Genoa kept the entire amount, rather than remitting half of it to Bennett. Then, on September 6, 1991, Genoa served a restraining notice upon Seneca Foods Corporation, which at the time owed Bennett $7,396.98 for crops it had purchased from him. This money was released to Genoa, which again failed to remit half of the amount to Bennett.

Meanwhile, during this time Bennett was also having trouble paying his other major creditor, Farm Credit. Bennett failed to make an interest payment due March 1, 1990 on the mortgage held by Farm Credit, and subsequently failed to make other payments of interest and principal. Thus, on October 12, 1990, Farm Credit commenced a foreclosure action against the properties covered by its mortgage, which at that time had an outstanding balance of approximately $161,312.

In an effort to avert foreclosure, Bennett entered into two separate contracts of sale to sell most of a farm that had been given to him by his father. These sales could not proceed, however, unless Genoa released its liens on the property which it had obtained by virtue of its judgment and the subsequent mortgage granted it by Bennett.

Genoa released its liens on one parcel consisting generally of vacant farmland, allowing Bennett to sell that parcel for $31,805, which he paid to Farm Credit. Genoa, however, refused to release its lien on the second parcel of land with a dwelling house, thus thwarting a contract for sale of that parcel for $85,000, and thus allowing the foreclosure to proceed.

The foreclosure sale took place on September 18, 1991, and Genoa purchased both farms, including the dwelling house and Bennett's residence, for $138,500. To finance this purchase, Genoa borrowed $140,000 from Farm Credit in return for a mortgage on the foreclosed property.

Thereafter, on October 12, 1991, Bennett filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code (11 U.S.C. §§ 1201–1330) ("Code"). On March 6, 1992, Plaintiffs commenced the instant adversary proceeding. On March 10, 1992, Plaintiffs filed an amended adversary complaint alleging, *inter alia*, that Genoa's aforementioned conduct constitutes a violation of RICO, and seeking, *inter alia*, treble damages totalling $1,500,000, plus attorneys' fees.

## ARGUMENTS

Plaintiffs contend generally that, by virtue of the foregoing, Genoa engaged in an unlawful scheme to systematically acquire Bennett's money and property. In their Second Amended Complaint, Plaintiffs allege that Genoa violated § 1962(a), (b), and (c) of the RICO statute in obtaining Bennett's money and property by 1) collecting an unlawful debt from Bennett, and 2) engaging in a pattern of racketeering activity. Plaintiffs also allege that Genoa conspired to violate 18 U.S.C. § 1962(a), which is itself a violation of 18 U.S.C. § 1962(d).

Plaintiffs claim that Genoa collected an unlawful debt from Bennett when it demanded and received payment on the Note given it in return for the release of the restraint on Bennett's checking account. Plaintiffs assert that the interest rate on the Note is twice the enforceable rate under § 5–501 of the New York General Obligations Law and that the Note therefore represents an unlawful debt pursuant to 18 U.S.C. § 1961(6).

■ Plaintiffs also assert that, in furtherance of their alleged "fraudulent scheme" to acquire Bennett's money and property, Genoa utilized "the US mail, telephone, and other courses of interstate wire and transportation facilities" at least twice within ten years. Plaintiffs maintain that such activity constitutes a "pattern of racketeering activity" under 18 U.S.C. § 1961(1), and thus, a further violation of 18 U.S.C. §§ 1962(a), (b), and (c).[2]

Genoa now moves for dismissal of Plaintiffs' RICO claim pursuant to Fed.R.Civ.P. 12(b)(6), as referenced by Fed.R.Bankr.P. 7012(b), for failure to state a claim upon which relief can be granted. Specifically, Genoa argues that the facts which Plaintiffs urge upon the Court, even if true, do not support the conclusion that Genoa collected an unlawful debt, engaged in a pattern of racketeering activity, or that Genoa conspired to undertake either of these courses of conduct.

Additionally, Genoa seeks dismissal of the RICO claim pursuant to Fed.R.Civ.P. 9(b), as referenced by Fed.R.Bankr.P. 7009, for failure to plead mail fraud and wire fraud with particularity.

## DISCUSSION

■ A motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) should be granted only where, viewing the complaint in the light most favorable to the plaintiff, it appears beyond doubt that the plaintiff cannot prove any facts which would entitle it to relief. *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir.1991) (citing *Con-*

*ley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). For purposes of ruling on a motion to dismiss a complaint, a court must assume that all of the plaintiff's allegations are true, *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986), because the relevant issue " '[i]s not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *In re Kelpe*, 98 B.R. 479, 480 (Bankr.W.D.Mo.1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

### I. Collection of an Unlawful Debt

■ Plaintiffs' claim that Genoa collected an unlawful debt is founded upon the allegation that the interest rate on the Note effectively exceeds twice the legal rate of interest in New York, in violation of 18 U.S.C. § 1961(6).[3] In New York, the maximum enforceable rate of interest is 16% per annum. N.Y.GEN.OBLIG.LAW § 5–501 (McKinney 1992). Thus, to constitute an unlawful debt within the meaning of 18 U.S.C. § 1961(6), the annual interest rate on the Note must be at least 32%.

Both parties appear to agree that the Note, which on its face provides for a monthly interest rate of 2%, bears interest at an annual rate of 27%. Although this rate is usurious under New York law, it is clearly not "unlawful" for RICO purposes. Plaintiffs, however, argue that because the Note allows for the compounding of monthly interest at 2%, if the obligation remains unpaid, "over time the effective annual in-

---

**2.** In their memorandum of law, Plaintiffs' maintain that their (Second) Amended Complaint also alleges a "pattern of racketeering activity" predicated on incidents of money laundering in violation of 18 U.S.C. § 1956. Plaintiffs' Second Amended Complaint simply alleges that "defendants invested ... funds obtained from the collection of an unlawful debt and racketeering activities in Genoa Ag ... in violation of 18 U.S.C. § 1962(a)." The Court concludes that this fails to sufficiently allege a "pattern of racketeering activity" based upon a violation of 18 U.S.C. § 1956. *See* 18 U.S.C. § 1956. Moreover, "[r]ule 12(b)(6) does not give the ... court authority to consider matters outside the pleadings ..." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991) (citation omitted).

**3.** 18 U.S.C. § 1961(6) defines "unlawful debt," in pertinent part as "a debt ... incurred in connection with ... the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate."

While it would not appear that Genoa is "in the business of lending money" at a usurious rate, the Court notes that a defendant need not be in the continuous business of making unlawful loans under this provision of the RICO statute. "Only one act of collecting or attempting to collect unlawful debt is necessary to establish that predicate act." *United States v. Eufrasio*, 935 F.2d 553, 576 (3rd Cir.1991) (citing *United State v. Vastola*, 899 F.2d 211, 228 n. 21 (3rd Cir.1990), *vac'd on other grounds*, —— U.S. ——, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990)).

terest rate will exceed 32% per annum, twice the enforceable rate in the State of New York." (*See* paragraphs "9" and "88" of Plaintiffs' Second Amended Complaint). Genoa argues that this reasoning is misplaced because, "[a]pplying plaintiffs' logic would make any unpaid creditor with a note with compounded interest rates eventually come within the realms of the RICO statute."

It is not entirely clear whether a debt, apparently "lawful" in its inception for purposes of a RICO determination, becomes unlawful under 18 U.S.C. § 1961(6) where the interest rate on such debt ultimately becomes twice the enforceable rate by virtue of the compounding of interest. Neither party proffers any authority for or against such a proposition, and the Court has found no such authority within the RICO context.

However, pertinent case law construing the effect of compound interest as it relates to usury offers some guidance on the issue. In *Matter of Carla Leather, Inc.*, 44 B.R. 457, 469 (Bankr.S.D.N.Y.1984), *aff'd*, 50 B.R. 764 (S.D.N.Y.1985), the court stated that it is "at least presumable that New York courts would not exempt from scrutiny for usury violations variable interest rate loan agreements which, although legal on their face, ultimately require interest in excess of (the criminal usury rate of) 25% per annum." (Quoted in *In re Rosner*, 48 B.R. 538, 558 (Bankr.E.D.N.Y.1985)). It thus appears that the issue remains largely unsettled. Yet it may at least be inferred from *Carla Leather*, *supra*, and *Rosner*, *supra*, that courts should not "exempt from scrutiny" for RICO violations loan or forbearance agreements, such as the one at issue here, which may ultimately require interest at a rate which is at least twice the enforceable rate. The Court, drawing all inferences in favor of Plaintiffs, *see Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989), therefore finds that Plaintiffs, by asserting that Genoa collected an unlawful debt under RICO, have stated a claim upon which relief may possibly be granted.[4]

---

4. The Court observes Genoa's assertion that, by its terms, the Note is to be paid in full by

## II. Pattern of Racketeering Activity

The Court now turns to Plaintiffs' claim that Genoa engaged in a "pattern of racketeering activity." A claim for damages under RICO based upon a pattern of racketeering activity must allege:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)–(c) (1976).

*Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir.1990) (quoting *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983)). Genoa argues that Plaintiffs have failed to allege that Genoa engaged in a "pattern of racketeering activity." "Racketeering activity" is defined by 18 U.S.C. § 1961(1) in pertinent part as "any act which is indictable under ... (18 U.S.C.) section 1341 (relating to mail fraud (or) section 1343 (relating to wire fraud) ..."

Originally, in their Amended Complaint, Plaintiffs alleged only the following with respect to a "pattern of racketeering activity":

> 89. The Genoa Ag defendants used their position as lien holders to obtain for themselves the opportunity to purchase the Debtor's property at foreclosure sale at greatly reduced prices. The Genoa Ag defendants used the US mail (sic), telephone and other courses of interstate wire and transportation facilities in furtherance of fraudulent activity.

> . . . .

> 92. Each of the aforesaid multiple violation (sic) of the mail and wire fraud statutes, 18 USC §§ 1341 and 1342 constitute an instance of "racketeering activity" as defined in 18 USC § 1961(1).

The foregoing would have perhaps been sufficient to allege that Genoa engaged in

December 31, 1992.

racketeering activity. However, it would not have been sufficient to allege that Genoa engaged in a "pattern of racketeering activity." A "pattern of racketeering activity" requires at least two acts of racketeering activity within ten years. *See* 18 U.S.C. § 1961(5) (1992). In their Amended Complaint Plaintiffs alleged that Genoa "committed more than two acts of fraud in the last ten years ..." (*See* paragraph "80" of Plaintiffs' Amended Complaint). Rote application of the language of 18 U.S.C. § 1961(5) to a given set of facts, however, will not necessarily yield a dispositive determination as to the existence of a "pattern of racketeering activity." As the Supreme Court stated in *Sedima, S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), "while two acts are necessary (under 18 U.S.C. § 1961(5)), they may not be sufficient." (Quoted in *Qantel Corp. v. Niemuller,* 771 F.Supp. 1361, 1370 (S.D.N.Y.1991).

Thus, in *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989), the Supreme Court stated that to establish a "pattern," "a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." (emphasis in original). *See also Seward v. Devine,* 888 F.2d 957, 963 (2d Cir.1989) (collecting cases).

As the Supreme Court explained in *H.J. Inc., supra:*

> Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition ... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

492 U.S. at 241–42, 109 S.Ct. at 2902. (Quoted in *Qantel,* 771 F.Supp. at 1371).

Plaintiffs' Amended Complaint completely failed to allege continuity of acts of mail fraud or wire fraud because it provided no indication as to the period of time over which such fraudulent activity extended, let alone whether such activity extended over a "substantial period of time."

■ Plaintiffs' Second Amended Complaint, however, attempts to establish the requisite "continuity," i.e., "pattern" of mail fraud. Plaintiffs' Second Amended Complaint thus alleges, in pertinent part that:

94. For some time after the Genoa Ag judgment ... was entered, the defendant Genoa Ag mailed monthly statements or notices through the U.S. Mail to plaintiff Bennett demanding payment plus interest at the rate of two percent (2%) per month.

95. On or about November 5, 1990 and on or about January 5, 1992, defendant Genoa Ag received payment on the usurious Note through the U.S. Mail.

.    .    .    .    .

97. On or about September 5, 1992 (sic), defendant Genoa Ag used the U.S. Mail to transmit a restraining notice to Seneca Foods to attach funds owed to the Debtor in an effort to collect on the usurious Note of October 5, 1990. Payment pursuant to the notice was likewise transmitted by U.S. Mail.

Plaintiffs' Second Amended Complaint alleges that Genoa utilized the mails over a period of almost two years in an effort to bring their allegedly fraudulent scheme to fruition, thereby engaging in a "pattern" of the racketeering predicate of mail fraud under 18 U.S.C. § 1961(1). A review of existing case law suggests that such conduct, if true, would be sufficient to warrant a finding of "continuity" for purposes of finding a "pattern of racketeering activity." *See Qantel,* 771 F.Supp. at 1371 (mail fraud acts occurring over "a few months" insufficient to establish continuity) (citing *Azurite Corp. Ltd. v. Amster & Co.,* 730 F.Supp. 571, 581 (S.D.N.Y.1990) (predicate acts occurring over seven months do not establish continuity); *West Mountain Sales, Inc. v. Logan Mfg. Co.,* 718 F.Supp.

1084, 1087 (N.D.N.Y.1989) (predicate acts occurring over four months do not establish continuity)).

Furthermore, Plaintiffs' Second Amended Complaint appears to allege a *threat* of future racketeering activity by Genoa, which, if extant, would satisfy the continuity requirement. *See Qantel*, 771 F.Supp. at 1371 (citing *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902). A threat of continued racketeering activity may be shown where "the predicate acts are part of an ongoing entity's regular method of doing business." *Id.*

Plaintiffs' Second Amended Complaint alleges that "Genoa Ag mailed monthly statements, adding an interest charge of two percent (2%) per month, to other debtors against whom Genoa Ag had taken judgments," thus, insinuating that the collection of unlawful debts through mail fraud is a part of Genoa's ongoing business. While the Court acknowledges that these allegations appear somewhat speculative, they nevertheless would support a RICO cause of action based upon a "pattern of racketeering activity" for which relief might ultimately be granted.

### III. Wire Fraud and Mail Fraud

The Court finds that Plaintiffs, in their Second Amended Complaint, have completely failed to plead wire fraud with particularity, as required by Fed.R.Civ.P. 9(b). The extent of Plaintiffs' allegation in this regard is that "defendants used the ... telephone and other courses of interstate wire facilities in furtherance of (their fraudulent scheme)," and that they "received unauthorized funds through the use of the ... telephone and other courses of interstate wire ... facilities ..." (*See* paragraphs "91" and "93" of Plaintiffs' Second Amended Complaint). To plead fraud with particularity, Plaintiffs must identify the number and content of the alleged wire communications, and must also be more specific as to how such communications furthered Genoa's alleged fraudulent scheme. *See Qantel Corp. v. Niemuller*,

771 F.Supp. at 1369. Plaintiffs' allegations in this regard clearly fail to comply with the requirements of Fed.R.Civ.P. 9(b), and their cause of action relating to wire fraud must therefore be dismissed.

Also, Genoa argues that Plaintiffs have not pled mail fraud with particularity. For a complaint to plead mail fraud with particularity it must describe the dates on which letters or documents were prepared, by whom and to whom such letters or documents were sent, the content of the letters or documents, and the role of the letters or documents in the fraudulent scheme. *See McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir.1992) (citing *Sun Savings and Loan Ass'n v. Deirdorff*, 825 F.2d 187, 196 (9th Cir.1987).

Plaintiffs' Amended Complaint alleged general, not specific, instances of the use of the mails by Genoa, and included virtually none of the aforementioned requisite information. Plaintiff's Second Amended Complaint, however, alleges that Genoa used the mails on at least two specific and named occasions within ten years in furtherance of their fraudulent scheme. (*See supra*, paragraphs "94" "95" and "97" of Plaintiffs' Second Amended Complaint). Reading Plaintiffs' Second Amended Complaint as a whole, and drawing all inferences therefrom in favor of Plaintiffs, the Court finds that it sufficiently alleges mail fraud for purposes of Fed.R.Civ.P. 9(b).

### IV. Conspiracy

Lastly, the Court finds that Plaintiffs' allegations in their Second Amended Complaint that Genoa conspired to commit mail fraud and wire fraud fails to state a conspiracy claim with particularity.[5] Plaintiffs allege in their Second Amended Complaint that:

87. The defendants' agents, employees, officers, servants and/or representative did engage in a fraudulent, unlawful and illegal plan and conspiracy with and through the utilization of diverted funds and property belonging to the Debtor by

---

5. Defendants, citing *Hecht, infra,* argue that Plaintiffs' conspiracy complaint fails to state a

claim upon which relief can be granted.

employing fraudulent and unlawful devices, including the use of means and instrumentalities in interstate commerce in the commission of fraudulent and illegal acts.

... and that

106. The defendants and or their agents, employees, officers, servants, and/or representatives conspired in aiding and abetting in the defrauding of the Debtor and they did knowingly, willfully and unlawfully combine, confederate and/or agree together with each other to violate the provisions of 18 U.S.C. § 1962(a) and (d).

In *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990), the Second Circuit stated that "[b]ecause the core of a RICO civil conspiracy complaint is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." (citations omitted). Thus, the Second Circuit in that case found that a complaint which alleged that "defendants were 'conspiring with agents, servants, and employees and others to conduct their affairs through a pattern of racketeering activity; ... [and were] conspiring to violate provisions of [section] 1962(a), [ ](b) and (c)'" (citations omitted) did not sufficiently allege a claim for conspiracy.

Plaintiffs' conspiracy allegation in their Second Amended Complaint is substantially identical to the one at issue in *Hecht*, and likewise fails to allege a specific agreement to commit predicate acts under RICO. Therefore, Plaintiffs' conspiracy cause of action set forth in the Second Amended Complaint must be dismissed.

## CONCLUSION

Plaintiffs' motion for leave to file their Second Amended Complaint is granted and all defendants in this adversary proceeding shall file and serve a response in accordance with Fed.R.Civ.P. 15(a) and Fed.R.Bankr.P. 7015.

For the reasons stated above, Genoa's motion for dismissal of the RICO cause of action set forth in Plaintiffs' Second Amended Complaint is denied in part and granted in part, as follows: 1) Genoa's motion for dismissal of Plaintiffs' RICO cause of action as it relates to allegations concerning the collection of an unlawful debt, for failure to state a claim upon which relief can be granted is, denied; 2) Genoa's motion for dismissal of Plaintiffs' RICO cause of action based upon a pattern of racketeering activity, for failure to state a claim upon which relief can be granted, is denied; 3) Genoa's motion for dismissal of the RICO cause of action as it relates to allegations of wire fraud is granted for failure to plead wire fraud with particularity; 4) Genoa's motion for dismissal of the RICO cause of action as it relates to allegations of mail fraud, for failure to plead mail fraud with particularity, is denied; and 5) Genoa's motion for dismissal of the RICO cause of action based upon a conspiracy to defraud is granted for failure to plead conspiracy to defraud with particularity.

IT IS SO ORDERED.